Sandra I. Weishart (089782),
sweishart@bargerwolen.com
Larry M. Golub (110545),
lgolub@bargerwolen.com
Jason C. Love (228881),
jlove@bargerwolen.com
BARGER & WOLEN LLP
633 West Fifth Street, 47th Floor
Los Angeles, California 90071
Telephone: (213) 680-2800
Facsimile: (213) 614-7399

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 9 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Attorneys for Plaintiff
Federal Deposit Insurance Corporation, as
Receiver for Security Pacific Bank

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER
FOR SECURITY PACIFIC BANK,

              Plaintiff,

      vs.

BANCINSURE, INC., an Oklahoma
Corporation,

              Defendant.

Case No. CV12-09882 DMG (MRWx)

**COMPLAINT FOR
DECLARATORY RELIEF AND
BREACH OF CONTRACT**

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

**COMPLAINT**

The Federal Deposit Insurance Corporation ("Plaintiff" or "FDIC"), as Receiver for Security Pacific Bank ("Security Pacific" or "Bank"), alleges as follows:

## 1.    **INTRODUCTION**

1.      The FDIC brings this action in its capacity as Receiver for Security Pacific.  Pursuant to 12 U.S.C. §1821(d)(2), the FDIC is the successor to all claims originally held by Security Pacific, and of any stockholder, member, account holder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.

2.      The FDIC brings this insurance coverage action against Defendant BancInsure, Inc. ("BancInsure"), which issued a Directors' and Officers' Liability Insurance Policy Including Company Reimbursement, No. 04DO00378-2 (the "BancInsure Policy") to Security Pacific as a Named Insured and under which the directors and officers of the Bank (collectively, the "D&Os") qualified as "Insured Persons" (as defined in the BancInsure Policy).  The BancInsure Policy has policy limits of $6,000,000 (the "Policy Limits").

3.      Following the closure of Security Pacific, FDIC notified certain of the Bank's D&Os that it was going to file a civil action against them, alleging various claims relating to the failure and insolvency of the Bank.  At the same time, the FDIC notified BancInsure of its impending lawsuit against certain of the Bank's D&Os. BancInsure denied coverage for the claims in the FDIC's anticipated lawsuit, raising two defenses to coverage discussed in further detail below.

4.      Following lengthy negotiations, the FDIC, five D&Os that would have been defendants in the FDIC's impending civil action and BancInsure entered into a settlement agreement.  Under this agreement, among other things, the five

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

**COMPLAINT**

1   D&Os assigned their rights to insurance coverage under the BancInsure Policy to the

2   FDIC.  The FDIC, the five D&Os and BancInsure further agreed that the merits of the

3   FDIC's claims against the five D&Os would not be litigated, that the FDIC would file

4   an action in federal court to determine whether the BancInsure Policy provided

5   coverage for the claims the FDIC would have asserted against the five D&Os and, if

6   the Court determines that such coverage exists, that BancInsure would pay the Policy

7   Limits to the FDIC.  As the FDIC alleges below, BancInsure's coverage position

8   lacks merit and, therefore, the FDIC is entitled to the Policy Limits pursuant to the

9   settlement agreement.

10

11                              **2.     JURISDICTION AND VENUE**

12           5.      This is an action arising under the laws of the United States of

13   America, specifically including 12 U.S.C. §1821(d)(2) and (k) and 12 U.S.C.

14   §1819(a).  This Court has jurisdiction over this action under 28 U.S.C. §§1332 and

15   1345.  This Court also has supplemental jurisdiction over state law claims pursuant to

16   28 U.S.C. §1367.

17

18           6.      The venue of this action is proper pursuant to 28 U.S.C. §1391(b),

19   because the claims and causes of action asserted herein arose within the Central

20   District of California.

21

22                                     **3.     PARTIES**

23   **A.     Plaintiff**

24           7.      Plaintiff FDIC, in its capacity as Receiver for Security Pacific, is

25   authorized to sue pursuant to 12 U.S.C. §1821(d)(2) and (k).  In accordance with 12

26   U.S.C. §1821(d)(2), FDIC as Receiver of Security Pacific, and as successor to all

27   claims of Security Pacific, and of any stockholder, member, accountholder, depositor,

28   officer, or director of such institution with respect to the institution and the assets of

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-2-

**COMPLAINT**

the institution, is a real party in interest to this action and is entitled to recover damages for any injuries sustained, including those set forth below.

**B.**   **Defendant**

8.     Defendant BancInsure is a stock insurance company incorporated under the laws of the state of Oklahoma, with its principal place of business located in Oklahoma City, Oklahoma.  BancInsure is authorized to conduct the business of insurance in the State of California, and it is licensed with the California Department of Insurance.

**4.   GENERAL ALLEGATIONS OF FACTS RELATING TO ALL CLAIMS FOR RELIEF**

**A.   Background of Security Pacific and Its Collapse**

9.     Security Pacific, initially called Golden Pacific Bank, was established as a state-chartered bank on December 7, 1981.  It was insured and primarily regulated by the FDIC.  It was renamed Network Bank USA on August 18, 1999 and became Security Pacific on November 4, 2004.  Security Pacific's main office (headquarters) was located at 12121 Wilshire Boulevard, Suite 1350, Los Angeles, California.  The Bank had four additional branches in California:  two in Los Angeles, one in Ontario, and one in Seal Beach.  The Bank also operated a loan production office in San Diego from its main office in Los Angeles.

10.     Security Pacific provided traditional banking activities within its marketplace and focused primarily on commercial real estate ("CRE"), commercial and industrial, construction, and other lending.  It specialized in residential acquisition, development and construction ("ADC") loans, many of which were significantly concentrated in the Inland Empire and Greater Los Angeles areas of Southern California.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-3-

**COMPLAINT**

11.     On November 7, 2008, the California Department of Financial Institutions closed Security Pacific and the FDIC was named as Receiver.  All deposit accounts were transferred to Pacific Western Bank in Los Angeles.  Security Pacific's assets at closing totaled $540.3 million.  As of September 30, 2012, the estimated loss to the Deposit Insurance Fund was $150,794,544.

12.     Following its review of the operations of the Bank after the closure, the FDIC determined that the Bank's management and Board of Directors, including directors on the Directors Loan Committee and Audit Committee, were on notice in the years prior to its closing that the Bank needed to carefully monitor its CRE and ADC loans, particularly in light of the Bank's high concentrations of such loans.  The FDIC determined that the Bank failed primarily due to management's pursuit of a high-risk business strategy focused on rapid asset growth concentrated in CRE and ADC loans on projects mostly concentrated in one area of Southern California, which were largely financed with wholesale funding sources, including volatile non-core deposits and borrowings.  The Bank received warnings as to the dangers of its large CRE and ADC concentrations, the dangers of making large construction loans, and the need to make sure its portfolio was diversified as to both type of loan and geographic location.  The Bank was further warned of the dangers of using the money desk/brokered deposits to fund the Bank's rapid growth.  Despite these warnings, construction loans continued to be the largest component of the Bank's loan portfolio.

13.     As alleged above, the Bank ceased its operations as of November 7, 2008.  In accordance with Section X (E) of the BancInsure Policy, coverage under the BancInsure Policy also ceased on that date.  Between November 5, 2008 and November 21, 2008, the Bank's counsel, certain D&Os and the FDIC sent at least six

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-4-

COMPLAINT

"notice" letters to BancInsure at its address set forth in the BancInsure Policy. These notice letters complied with the provision of the BancInsure Policy to provide notice of a potential claim within 30 days following the end of the BancInsure Policy period.

**B.** **Notice to the Bank's D&Os and to BancInsure as to the FDIC's Impending Lawsuit and Subsequent Negotiations**

14.     In mid-October 2011, the FDIC provided written notice to certain of the Bank's D&Os that the FDIC was prepared to file a civil action against them, alleging claims of breach of fiduciary duty, negligence and gross negligence in connection with their role in the failure of the Bank. Prior to the initiation of litigation, the FDIC advised these D&Os that it was willing to meet with them, along with their counsel, to discuss the FDIC's claims.

15.     By separate letter dated October 11, 2011, the FDIC also invited BancInsure, which had issued the BancInsure Policy that provided liability insurance coverage to the D&Os, and which had been provided notice of the FDIC's potential claims, to participate in the meeting.

16.     Over the course of the next year, the FDIC, the D&Os and BancInsure engaged in extensive negotiations concerning the possible resolution of the FDIC's claims against the D&Os and the coverage defenses raised by BancInsure. In addition to numerous communications among the parties discussing settlement issues, the FDIC permitted the D&Os and BancInsure to review relevant portions of the Bank's files (now in the possession of the FDIC) relating to the FDIC's claims, including specifically 16 loans files that caused a loss to the Bank in excess of $60 million that the FDIC would seek to recover in its planned civil action against the D&Os. During the course of these communications, the FDIC also provided to the D&Os and BancInsure a draft of the complaint it intended to file if resolution of the

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-5-

COMPLAINT

FDIC's claims among the FDIC, the D&Os and BancInsure could not be achieved without litigation.

### C.   Demand to BancInsure and its Denial of Coverage

17.   On November 14, 2011, the FDIC made a demand on BancInsure to pay the Policy Limits with respect to the claims made against the D&Os.

18.   On November 30, 2011, BancInsure responded to the Policy Limits demand, providing its "advisory coverage determination" as to the FDIC's "potential claim," and stated "there would be no coverage available for the potential claims set forth in the [FDIC's] draft complaint."  While BancInsure asserted that it reserved its rights to set forth additional bases for its position that there was no coverage for the FDIC claims made against the D&Os, BancInsure's coverage position was based on two – and only two – policy provisions, Exclusion No. 11 (the "insured vs. insured" exclusion) and the Notice of Claim provision set forth in Section IX of the BancInsure Policy.

19.   On December 19, 2011, the FDIC responded to the denial by BancInsure, explaining why coverage did exist under the BancInsure Policy for the FDIC's claims against five of the D&Os.  With respect to BancInsure's reliance on the "insured vs. insured" exclusion, the FDIC advised that the exclusion was inapplicable for at least four reasons:

- The Regulatory Exclusion Endorsement (which was ignored in the BancInsure letter) specifically deletes the regulatory exclusion and expressly extends $6,000,000 in coverage for claims made by regulatory agencies and deposit insurance organizations, thus trumping the standard policy form that contains the "insured vs. insured" exclusion;

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-6-

COMPLAINT

- The "insured vs. insured" exclusion and its use of the word "receiver" does not apply to the FDIC, as opposed to, for example, a bankruptcy receiver;
- At best, under the facts of this case (which again involve the Regulatory Exclusion Endorsement specifically excising the exclusion concerning claims made by regulatory entities), the policy language is ambiguous and, therefore, it will be construed against BancInsure; and
- The exclusion has not been upheld in other reported cases in which insurers sought to enforce it in the regulatory context.

20.     As for BancInsure's reliance on the Notice of Claim provision, the FDIC's letter to BancInsure advised that the FDIC, counsel for the Bank and two of the D&Os had provided timely, multiple and ample notice of the FDIC's potential claims prior to the expiration of the BancInsure Policy and within the 30-day time period to provide notice after policy expiration.[1]  Additionally, after receiving the first notice letter, BancInsure sent a letter acknowledging notice and then set up a claim number.  Moreover, BancInsure never advised the FDIC, counsel for the Bank and/or the D&Os that the information provided by the multiple notice letters was insufficient, nor did BancInsure request additional information or advise that additional information would be needed to perfect a claim.  The FDIC therefore stated that:

- BancInsure's reliance on the Notice of Claim provision lacked merit;
- Even if BancInsure's assertion as to notice was viable, BancInsure waived and/or will be estopped to rely on its Notice of Claim provision;
- BancInsure has not shown or demonstrated any material prejudice as a

---

[1] Item 9 of the Declarations page of the BancInsure Policy provides the mailing address of BancInsure in Oklahoma City.  As alleged above, at least six "notice" letters were sent to BancInsure at this address within 30 days following the end of the BancInsure Policy period.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

**COMPLAINT**

result of any purported failure to timely or fully comply with the BancInsure Policy's Notice of Claim provisions; and

- Since BancInsure acted as its own agent/broker for the coverage provided to the D&Os under the BancInsure Policy, BancInsure possessed even greater duties and obligations if there was some need to supply further documentation or facts as to notice of the FDIC's claims, and cannot now complain as to any lack of adequate notice.

21.     The issue as to whether coverage exists under the BancInsure Policy for the FDIC's claims against the five D&Os is the subject of this lawsuit.

22.     A true and correct copy of the BancInsure Policy is attached hereto as Exhibit A and incorporated herein by reference.

### D.     The FDIC, BancInsure and the D&Os Enter Into a Settlement to Resolve the FDIC's Claims and Litigate the Coverage Issues

23.     Following further discussions after the date BancInsure issued its "advisory coverage determination" concerning the FDIC's claims, the FDIC, BancInsure and the five D&Os entered into a settlement agreement that established a procedure to resolve the coverage dispute in an expeditious and mutually agreeable manner, and also resolved the FDIC's claims against the five D&Os without the need to litigate the underlying claims on the merits ("Settlement Agreement"). The Settlement Agreement was effective as of August 8, 2012 and fully executed by the FDIC, the five D&Os, BancInsure and the parties' counsel as of November 14, 2012.

24.     Pursuant to the Settlement Agreement, the five D&Os assigned all of their rights, title and interest with respect to the BancInsure Policy and any claims for coverage thereunder or related thereto to the FDIC. The FDIC in turn assumed all

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-8-

COMPLAINT

rights, title and interest with respect to the BancInsure Policy and any claims for coverage thereunder or related thereto.  Further, the parties to the Settlement Agreement waived the requirement established in Section X (H) of the BancInsure Policy that any consent to assignment be physically endorsed to the BancInsure Policy, and they stipulated that the assignment set forth in the Settlement Agreement satisfied the requirement that BancInsure consent in writing to any assignment as required by Section X (H) of the BancInsure Policy.

25.     Pursuant to the Settlement Agreement, the FDIC, the five D&Os and BancInsure also agreed that the five D&Os and the FDIC had fully satisfied Section X (D)(1) of the BancInsure Policy and that the Settlement Agreement constituted a written agreement among the parties pursuant to which BancInsure's obligation to pay "Loss," as defined under the BancInsure Policy, would be finally determined in accordance with the Settlement Agreement and the BancInsure Policy. Accordingly, the parties to the Settlement Agreement waived any requirement under the BancInsure Policy of an adjudication against the five D&Os establishing an obligation to pay before an action is taken against BancInsure.

26.     Based on the terms of the Settlement Agreement set forth in the prior paragraph, there is no need for the FDIC and the five D&Os to litigate the FDIC's claims against the five D&Os, and BancInsure has expressly acknowledged that Section X (D)(1) of the BancInsure Policy will not be asserted as a defense to coverage and also has explicitly acknowledged that, if the FDIC prevails in this action (or if the FDIC and BancInsure settle this action prior to final judgment), the FDIC will not be required to file an action against the five D&Os or to otherwise establish any liability against them in order to obtain the Policy Limits of the BancInsure Policy (or any portion thereof in the event of a settlement).

**COMPLAINT**

27.     Pursuant to the Settlement Agreement, the FDIC, the five D&Os and BancInsure agreed that the FDIC would file an action in the United States District Court for the Central District of California, naming BancInsure as a defendant, within 14 calendar days after the Settlement Agreement was fully executed by the parties.

### E.     The Relevant Provisions of the BancInsure Policy

28.     The pertinent portions of the BancInsure Policy (attached as Exhibit A) are set forth as follows.

29.     Initially, the BancInsure Policy provides two insuring agreements, Section I (A) for claims made against **Insured Persons** (defined to include "all persons who were, now are or shall be the directors and officers of the Company"), and Section I (B) for claims made against the **Company** (which is the Bank and any subsidiary).  For present purposes, only Section I (A) is relevant to the FDIC's claims against the five D&Os.  (Text in boldface type is a term defined in the BancInsure Policy's Definitions (Section IV).)

30.     Specifically, Section I (A) provides that "if during the **Policy Period**, any **Claim** or **Claims** for a **Wrongful Act** are <u>first made</u> against any **Insured Person**, and reported to the Insurer, the Insurer, subject to the applicable law, will pay on behalf of the **Insured Persons**, **Loss** which the **Insured Persons** shall be legally obligated to pay . . . ."  (Underlined text in original.)

31.     The term **Claim** is defined in relevant part as follows:

"**Claim**" shall mean **any** judicial or administrative proceeding that is filed against an **Insured Person** in any state or federal

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-10-

**COMPLAINT**

court or administrative agency, in which such **Insured Person** could be subjected to a binding adjudication of liability for damages or other civil relief.

32.   The term **Wrongful Act** is defined as follows:

"**Wrongful Act**" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by any **Insured Person** acting solely in their **Insured Capacities**.[2]

33.   The term **Loss** is defined in relevant part as follows:

"**Loss**" shall mean any amount that the **Insured Persons** are legally obligated to pay for any **Claim** or **Claims** made against them for **Wrongful Acts** as to which coverage applies, and shall include but not be limited to damages, judgments, settlements, and reasonable **Defense Costs**[3] . . . .

34.   The Declarations page of the BancInsure Policy provides that the aggregate limit of liability is $6,000,000 and that the retention amount is $0 with

---

[2] **Insured Capacities** "means the directors and officers of the **Company**," as opposed to acting in such capacity for an entity other than the **Company**. (The term **Insured Capacities** is amended in the Not-For-Profit Organizations Coverage Endorsement, form no. BI-DO-00311 (081998) to the BancInsure Policy, but the changes therein are not material and do not impact the portion of the definition addressed in the text.)

[3] For purposes of this coverage dispute, and in light to the Settlement Agreement, the issue of Defense Costs is not relevant. Additionally, the term **Loss** is amended in the Coverage Revision Endorsement, form no. BI-DO-00400 (102000) to the BancInsure Policy, but the changes therein are not material and do not impact the portion of the definition addressed in the text.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-11-

COMPLAINT

respect to claims involving the Bank's directors and officers.

35.     There are two exclusions that are relevant to this coverage dispute, as found in Section V, EXCLUSIONS, specifically No. 11 (the "insured vs. insured" exclusion) and No. 12 (the "regulatory exclusion").  They exclude coverage for:

(11) a **Claim** by, or on behalf, or at the behest of, any other **Insured Person**, the **Company**, or any successor, trustee, assignee or receiver of the **Company** except for:

a.     a shareholder's derivative action brought on behalf of the **Company** by one or more shareholders who are not **Insured Persons** and make a **Claim** without the cooperation or solicitation of any **Insured Person** or the **Company**; . . . .

(12) any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization ("Agency").

This exclusion shall include, but not be limited to, any type of legal action which any such Agency may bring as receiver, conservator, trustee, liquidator, rehabilitator or in any capacity, whether such action or proceedings is brought in the name of such Agency or by or on behalf of such Agency in the name of any other entity or solely in the name of any third party;

36.     The regulatory exclusion (No. 12, above) in the BancInsure Policy

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-12-

**COMPLAINT**

was deleted pursuant to the Regulatory Exclusion Endorsement, form no. BI-DO-00316 (07/92), and such endorsement expressly extends the $6,000,000 in Policy Limits for claims made by regulatory agencies and deposit insurance organizations. The Regulatory Exclusion Endorsement, after specifically deleting Exclusion No. 12, provides as follows:

> Notwithstanding the Limit of Liability provided by the Policy to which this endorsement is attached, the Insurer's maximum aggregate liability for all Loss (including defense costs) arising out of all Claims made during the Policy Year as a result of any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization shall be $6,000,000.00.

37.     There is one other portion of the BancInsure Policy raised by BancInsure in its November 30, 2011 "advisory coverage determination" letter – the Notice of Claim provision set forth in Section IX of the BancInsure policy.   In relevant part, that provision provides as follows:

> A. The **Insured Persons** and the **Company** shall, as a condition precedent to their rights under this Policy, give the Insurer notice, in writing, as soon as practicable of any **Claim** and shall give the Insurer such information and cooperation as it may reasonably require.

> B. If, during the **Policy Period**, any **Insured Person** or the **Company** (1) receives written or oral notice from any party that it is the intention of such party to hold any **Insured**

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-13-

**COMPLAINT**

**Person** responsible for a specific alleged **Wrongful Act**, or (2) becomes aware of any circumstances that may give rise to a **Claim** against any **Insured Person** for a specific alleged **Wrongful Act**; and, as soon as practicable gives written notice of the potential **Claim** to the **Insurer** as referenced in subsections (1) and (2) above, which notice is in any event received by the Insurer no later than thirty (30) days following the end of the **Policy Period**, and such notice includes (1) the reasons for anticipating such a **Claim**, (2) the nature and date of the alleged **Wrongful Acts**, (3) the alleged injury, (4) the names of the potential claimants and any **Insured Person** involved in the alleged **Wrongful Acts**, and (5) the manner in which any **Insured Person** or the **Company** first became aware of the potential **Claim**, then any **Claim**, the potential of which was specifically identified as required above, shall, for the purpose of this Policy, be treated as a **Claim** made during the **Policy Period**.

C. Notice hereunder shall be effective on the date of receipt by the Insurer at the address shown in Item 9. of the Declarations.

D. In addition to furnishing the notice as provided in Section IX. A. and B., the **Insured Persons** and the **Company** shall, as soon as practicable, furnish the Insurer with copies of reports, investigations, pleadings and all other papers in connection therewith.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

**COMPLAINT**

38.     BancInsure, in its November 30, 2011 "advisory coverage determination" letter, fails to reference another portion of the BancInsure Policy that contains broad language as to "notice" and seeks to deem any actual Claim that is made after the end of the policy period as a Claim during the policy period in which notice was first given.  Specifically, Section III, Coverage Clause, provides in relevant part as follows:

> This Policy shall cover, subject to all other provisions of the Policy, **Loss** that results from a **Claim** for a **Wrongful Act** committed during or prior to the **Policy Period** on the condition that written notice of the **Claim** is given to the Insurer at the address shown in Item 9. of the Declarations. Such notice must be received by the Insurer (1) within the **Policy Period** . . . .  For purposes of this Section III., any **Claim** made subsequent to the **Policy Period** as to which written notice was received by the Insurer at the address shown in Item 9. of the Declarations within the **Policy Period** as provided in Section IX. B., shall be treated as a **Claim** made during the **Policy Period**.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief Against BancInsure)

39.     The FDIC realleges and incorporates by reference each of the allegations contained in paragraphs 1-38 of this Complaint, as though fully set forth herein.

40.     As alleged above, the five D&Os have assigned all of their rights under the BancInsure Policy to the FDIC, and BancInsure has consented to such assignment so as to resolve the coverage dispute concerning the claims made by the

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-15-

COMPLAINT

FDIC against the five D&Os.  As a result of such assignment, the FDIC stands in the shoes of the five D&Os with respect to BancInsure's denial of coverage for the claims made by the FDIC against the five D&Os and is able to assert the five D&Os' coverage position as well as their contractual rights to indemnification under the BancInsure Policy.

41.     As set forth in this Complaint, the FDIC contends that, under the terms of the BancInsure Policy, BancInsure was obligated to provide coverage for the claims made against the five D&Os by the FDIC arising out of the failure of Security Pacific and that the defenses to coverage raised by BancInsure (namely, the "insured vs. insured" exclusion and the claimed non-compliance with the Notice of Claim provision referenced above) lack merit and, therefore, do not preclude such coverage. The FDIC is informed and believes, and on that basis alleges, that BancInsure disputes the contentions of the FDIC and contends to the contrary.

42.     An actual, justiciable controversy has arisen and now exists between the FDIC, on the one hand, and BancInsure, on the other hand, concerning their respective rights and duties in that, as stated above, the FDIC contends that the coverage defenses raised by BancInsure do not apply, whereas BancInsure disputes this contention.

43.     The FDIC desires a judicial determination of the rights and obligations under the BancInsure Policy concerning the merits of BancInsure's claimed coverage defenses.  To the extent there is coverage for the FDIC's claims made against the D&Os, BancInsure is obligated to pay its Policy Limits to the FDIC pursuant to the Settlement Agreement.  A judicial determination is necessary, appropriate and desirable at this time so that the parties may ascertain their respective rights and duties as to one another and may conduct themselves accordingly.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-16-

COMPLAINT

## SECOND CLAIM FOR RELIEF

### (Breach of Contract Against BancInsure)

44.     The FDIC realleges and incorporates by reference each of the allegations contained in paragraphs 1-43 of this Complaint, as though fully set forth herein.

45.     At all times relevant hereto, the FDIC and its assignors complied with all terms and performed all conditions required of them under the BancInsure Policy, including the timely and repeated submission of notice to BancInsure, except to the extent such conditions are rendered moot by the doctrines of waiver and/or estoppel due to BancInsure's conduct, or to the extent such conditions were waived or consented to under the Settlement Agreement.

46.     In responding to the FDIC's claims against the five D&Os, and at all relevant times thereafter, BancInsure materially breached the terms of the BancInsure Policy by wrongfully denying coverage for the FDIC's claims and failing to indemnify the D&Os by paying the Policy Limits to the FDIC.

47.     By reason of the foregoing, and as a proximate result of BancInsure's conduct, the FDIC is entitled to a judgment in its favor, in the amount of the Policy Limits of the BancInsure Policy.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-17-

COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, the FDIC prays for relief against BancInsure as follows:

1. For the $6,000,000 in Policy Limits under the BancInsure Policy;

2. For the FDIC's costs of suit;

3. For prejudgment interest;

4. For such other and further relief as this Court deems just and proper.

Dated:  November 19, 2012                    BARGER & WOLEN LLP

By: _____
SANDRA I. WEISHART
LARRY M. GOLUB
Attorneys for Plaintiff Federal
Deposit Insurance Corporation, as
Receiver for Security Pacific Bank

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-18-

**COMPLAINT**

# EXHIBIT A

# BancInsure®

## DIRECTORS & OFFICERS LIABILITY

DIRECTORS & OFFICERS LIABILITY



BANCINSURE

MARCH 29, 2007

CUSTOMER# 6004428

INVOICE# 132169

Agent - RICHARD HOLMES%%
(714) 693-1955

Name of Insured:

      SECURITY PACIFIC BANK
      845 NORTH EUCLID AVE.
      ONTARIO, CA 91762

Effective from: 01/26/2007 to 01/26/2010

| Policy Type | Number | Trans Type | Year | Premium |
|-------------|--------|------------|------|---------|
| DIRECTORS AND OFFICERS | 04DO000378-2 | REN | | $76,013.00 |
| | | | TOTAL DUE | $76,013.00 |

Terrorism Certified Acts Premium of $764.00 is included in above total.

PAYMENT IS DUE UPON RECEIPT OF THIS INVOICE

Please make check payable to:

BancInsure, Inc.
P. O. Box 268946
Oklahoma City, OK
73126-8946

ORIGINAL

MCR                                                      03/29/2007

# Directors' and Officers' Liability Insurance Policy Including Company Reimbursement



## (HEREINAFTER CALLED THE INSURER)

# BancInsure

(HEREINAFTER CALLED THE INSURER)

## Directors' and Officers' Liability Insurance Policy
## Including Company Reimbursement

**PROFESSIONAL LIABILITY INSURANCE PROVIDED HEREUNDER IS WRITTEN ON A "CLAIMS-MADE" BASIS AND ONLY APPLIES TO CLAIMS FIRST MADE WHILE THIS INSURANCE IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, DISCOVERY PERIOD APPLIES.**

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the Insurer, including the statements made in the Application Form (and all attachments and materials submitted therewith), and subject to all the provisions of this Policy, the Insurer agrees as follows:

## SECTION I. INSURING AGREEMENTS.

A.  The Insurer agrees with the **Insured Persons** that, subject to all the other provisions of this Policy, if during the **Policy Period,** any **Claim** or **Claims** for a **Wrongful Act** are <u>first made</u> against any **Insured Person**, and reported to the Insurer, the Insurer, subject to the applicable law, will pay on behalf of the **Insured Persons, Loss** which the **Insured Persons** shall be legally obligated to pay and which is not otherwise undertaken to be paid by the Insurer on behalf of the **Company** in accordance with Section I.B.

B.  The Insurer agrees with the **Company** that, subject to all the other provisions of this Policy, if, during the **Policy Period,** any **Claim** or **Claims** for a **Wrongful Act** are first made against any **Insured Person**, and reported to the Insurer, the Insurer will pay on behalf of the **Company, Loss** for which the **Company** has, to the extent required or permitted by law, indemnified the **Insured Persons.**

## SECTION II. EXTENDED REPORTING PERIOD.

If the Insurer or **Company** cancels or does not renew the Policy, the **Parent Company** shall have the right, upon payment of the premium shown in Item 6. (a) of the Declarations, to an extension of the coverage granted by this Policy with respect to any **Claim** or **Claims** made and reported to the Insured during the **Extended Reporting Period**, but only with respect to any **Wrongful Act** committed before the effective date of such cancellation or nonrenewal.

There shall be no right to an **Extended Reporting Period** unless a written request for this extension, together with payment of the appropriate premium is received by the Insurer at the address shown in Item 9. of the Declarations within thirty (30) days after the effective date of cancellation or nonrenewal of the Policy.

## SECTION III. COVERAGE CLAUSE.

This Policy shall cover, subject to all other provisions of the Policy, **Loss** that results from a **Claim** for a **Wrongful Act** committed during or prior to the **Policy Period** on the condition that written notice of the **Claim** is given to the Insurer at the address shown in Item 9. of the Declarations. Such notice must be received by the Insurer (1) within the **Policy Period**, or (2) within the **Extended Reporting Period**, if the **Extended Reporting Period** is elected by the **Parent Company** in accordance with Section II. For purposes of this Section III., a **Claim** made subsequent to the **Policy Period** as to which written notice was received by the Insurer at the address shown in Item 9. of the Declarations within the **Policy Period** as provided in Section IV. B. shall be treated as a **Claim** made during the

## SECTION IV.  DEFINITIONS.

A.  **"Parent Company"** shall mean the entity that is named in Item 1. of the Declarations, as legally constituted at the Inception Date of the Policy.

B.  **"Company"** shall mean the **Parent Company** and any **Subsidiary** as defined in Section IV.D.

C.  **"Insured Person or Insured Persons"** shall mean all persons who were, now are or shall be the directors and officers of the **Company.**

D.  **"Subsidiary"** shall mean an entity that, at the Inception Date of this Policy, is named in the Application Form and of which more than fifty percent (50%) of the voting stock is owned by the **Parent Company**, either directly or through one or more of its **Subsidiaries.**

E.  **"Claim"** shall mean **any** judicial or administrative proceeding that is filed against an **Insured Person** in any state or federal court or administrative agency, in which such **Insured Person** could be subjected to a binding adjudication of liability for damages or other civil relief. A **Claim** shall be deemed to have been made on the date that the judicial or administrative proceeding is filed in court or with the administrative agency.

F.  **"Wrongful Act"** shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by any **Insured Person** acting solely in their **Insured Capacities.**

G.  **"Interrelated Wrongful Acts"** shall mean **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

H.  **"Loss"** shall mean any amount that the **Insured Persons** are legally obligated to pay for any **Claim** or **Claims** made against them for **Wrongful Acts** as to which coverage applies, and shall include but not be limited to damages, judgments, settlements, and reasonable **Defense Costs**, provided always, however, such **Loss** shall not include regular or overtime wages, salaries or fees of the directors, officers or employees of the **Company**, fines or penalties imposed pursuant to law, or matters that may be deemed uninsurable under the law pursuant to which the Policy shall be construed.

I.  **"Defense Costs"** means that part of **Loss** consisting of reasonable attorneys' fees, costs, and expenses (but shall not include regular or overtime wages, salaries, or fees of the directors, officers or employees of the **Company**) incurred in the defense of a **Claim** made against any **Insured Person**, appeals therefrom and the cost of attachment or similar bonds. Neither **Defense Costs** nor any other part of **Loss** shall include any attorneys' fees, costs, or expenses incurred in the prosecution of affirmative claims, counterclaims, or cross claims (other than a **Claim** for contribution or indemnification brought with the Insurer's consent against a party not insured under this Policy), or the defense of **Claims** or causes of action that are not covered under this Policy, or the defense of individuals or entities, including the **Company**, that are not covered under this Policy.

Provided, however, that the prefatory sentence of Section V. EXCLUSIONS. notwithstanding, **Defense Costs** includes the reasonable and necessary attorneys' fees, costs and expenses incurred by **"Insured Persons"** in the defense of **Claims** alleging the following, if the **Claim** is otherwise insured and not excluded by the Policy:

> (1) Conduct excluded under Section V. EXCLUSIONS., Paragraphs 1., 2., 3., and 4.;
>
> (2) Conduct uninsurable by law;
>
> (3) Reckless, willful, fraudulent, dishonest or bad faith conduct expressly excluded as such in any endorsement;
>
> (4) Conduct in violation of statute, governmental regulation or order expressly excluded as such in any endorsement;
>
> (5) Conduct by **Insured Persons** against the interests of the **Company**.

In consideration of the coverage extended in (1), (3) and (4) above, the provisions concerning payment and reimbursement of **Defense Costs** in Section V. EXCLUSIONS., Paragraph 4, and any similar provisions in any endorsement, are hereby deleted.

If a judgment or other final adjudication in any suit or arbitration establishes any conduct described in (1) through (5) above, or if such conduct is otherwise established in fact, the **Insurer** shall have no further obligation to pay any **Loss**, including **Defense Costs**, related in any way to any **Claim** in which such conduct is alleged.

If such conduct is established in fact, the **Company**, and any **Insured Person** who has committed the excluded conduct, agree to repay to the **Insurer**, on demand, all monies (including any costs of defense) the **Insurer** has paid in connection with the **Claim**. Only the **Company** shall be liable to repay the **Insurer** unless the **Company** would not be permitted by law to indemnify the **Insured Persons** for the reimbursable amounts. In such event, the **Insured Persons** who have committed the noncovered conduct shall be liable, jointly and severally, to repay the **Insurer** all reimbursable amounts.

J.  **"Policy Year"** shall mean the period of one year following the Inception Date of the Policy as shown in Item 5. of the Declarations or any anniversary thereof; or if the time between the Inception Date or any anniversary and the termination of the Policy is less than one year, such lesser period. Notwithstanding the above, if the Expiration Date shown in Item 5. of the Declarations is extended

of Liability provided during the last **Policy Year**.

K.  **"Policy Period"** shall mean the period from the Inception Date of this Policy to either the Policy Expiration Date, as shown in Item 5. of the Declarations or the date on which the Policy is effectively terminated, whichever is sooner, but shall not include the **Extended Reporting Period**.

L.  **"Extended Reporting Period"** shall mean the period of time that is provided, if properly requested pursuant to Section II., for **Insured Persons** to discover and report to the Insurer **Claims** that arise out of **Wrongful Acts** that occurred prior to the effective termination of the Policy. The **Extended Reporting Period** shall extend from the effective date of the cancellation or nonrenewal of the Policy for the number of days shown in Item 6. (b) of the Declarations until 12:01 a.m. on the final day.

M.  **"Insured Capacity(ies)"** means the directors and officers of the **Company** and shall not include the position of director or officer of any entity other than the **Company** (even if the **Insured Person** has been directed or requested to serve as a director or officer of such other entity) except where this Policy has been specifically endorsed to provide such an extension of coverage.

**SECTION V. EXCLUSIONS.**

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insured Persons** based upon, arising out of, relating to, in consequence of, or in any way involving:

1.  any **Insured Person** gaining in fact any profit or advantage to which they were not legally entitled;

2.  the receipt by an **Insured Person** of any remuneration paid to any **Insured Person** without the previous approval of the governing bodies of the **Company**;

3.  profits in fact made from the purchase and sale or sale and purchase by any **Insured Person** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law or common law;

4.  any fraudulent, dishonest or criminal actions of the **Insured Persons**. Provided, however, the **Insured Persons** shall be indemnified for **Defense Costs** as to any **Claims** alleging such fraudulent, dishonest or criminal actions, unless a judgment or final adjudication establishes such fraudulent, dishonest or criminal acts or if such acts are otherwise established in fact. In the event that the Insurer has no liability hereunder, the **Insured Persons** agree to repay to the Insurer, upon demand, all monies advanced by it in connection with such **Claim**;

5.  defamation, libel, slander, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault or battery;

6.  any **Claim** which is insured by any other valid policy or policies whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise; and regardless of whether any **Loss** in connection with such **Claim** is collectible or recoverable under such other policy or policies; provided, however, this exclusion shall not apply to the amount of **Loss** that is in excess of the amount of any deductible and the limit

7. (1) any **Wrongful Act** or any fact, circumstance or situation that has been the subject of notice under any policy of insurance in effect prior to the Inception Date of this Policy, or (2) any other **Wrongful Act**, whenever occurring, which together with a **Wrongful Act** that has been the subject of such notice would constitute **Interrelated Wrongful Acts;**

8. bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property including loss of the use thereof;

9. any **Wrongful Acts** of the **Insured Persons** serving in the capacities as fiduciaries including fiduciaries as defined in the Employee Retirement Income Security Act of 1974 and amendments thereto, or similar provisions of any federal, state or local statute or common law relating to pension or welfare plans or as administrators or trustees of any IRA or H.R. 10 plan;

10. (1) the actual, alleged or threatened discharge, release or escape of Pollutants into or on real or personal property, water or the atmosphere; or (2) any **Loss** or expense arising out of any direction or request that the **Company** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants.

   For the purpose of this provision, Pollutants means any substance identified on a list of hazardous substances issued by the United States Environmental Protection Agency or a state, county, municipal or local counterpart thereof. Such list shall include but not be limited to solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemical or waste materials. Pollutants shall also mean any unlisted substance exhibiting characteristics of ignitability, corrosivity, reactivity or toxicity to a degree which would cause it to be so listed if the subject were to be addressed by the United States Environmental Protection Agency or state, county, municipal or local counterpart thereof;

11. a **Claim** by, or on behalf of, or at the behest of, any other **Insured Person,** the **Company,** or any successor, trustee, assignee or receiver of the **Company** except for:

   (a) a shareholder's derivative action brought on behalf of the **Company** by one or more shareholders who are not **Insured Persons** and make a **Claim** without the cooperation or solicitation of any **Insured Person** or the **Company;**

   (b) any wrongful termination of employment action brought by a former officer of the **Company** against any **Insured Person;**

   (c) unlawful discrimination against any **Insured Person** on any basis prohibited by applicable law including but not limited to sexual or other forms of harassment;

12. any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization ("Agency").

   This exclusion shall include, but not be limited to, any type of legal action which any such Agency may bring as receiver, conservator, trustee, liquidator, rehabilitator or in any capacity, whether such action or proceeding is brought in the name of such Agency or by or on behalf of such Agency in the name of any other entity or solely in the name of any third party;

a. with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of it Limit of Liability; or

b. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(2) to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

a. the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

b. the nuclear material is contained in spent fuel or waste at anytime possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

c. the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction maintenance, operation or use of any nuclear facility, bu if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property to such nuclear facility and any property thereat.

(3) As used in this section:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material;

"source material," "special nuclear material," and "by-product material" have the meaning given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (1) or (b) thereof;

"nuclear facility" means

a. any nuclear reactor,

b. any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging

c. any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury or to destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

**NOTE:** The **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person** for the purposes of determining the applicability of Section V., Exclusions 1, 2, 3 and 4.

### SECTION VI.   LIMIT OF LIABILITY AND RETENTIONS.

A. The Insurer shall be liable to pay that portion of any **Loss** (including **Defense Costs**) in excess of the applicable retention amount shown in Item 4. of the Declarations up to the Limit of Liability stated in Section VI.B. below.

B. The Insurer's maximum aggregate liability for all **Loss** hereunder (including **Defense Costs**) arising out of all **Claims** made during the **Policy Year** shall be the Limit of Liability shown in Item 3. of the Declarations. The Limit of Liability during the **Extended Reporting Period** shall be the remaining portion, if any, of the aggregate Limit of Liability provided by the last **Policy Year**. For purposes of this Section VI. B., a **Claim** shall be deemed to be made on the date that notice is given to the Insurer pursuant to Section IX. B. or on the date the **Claim** is made against the **Insured Persons** whichever shall occur first, regardless of when the **Wrongful Act** occurred.

C. Notwithstanding the provisions of Section VI. B., all **Claims** that (1) are made and reported to the Insurer during the **Policy Period** or the **Extended Reporting Period** (if applicable), and (2) involve the same **Wrongful Act** or **Interrelated Wrongful Acts** of one or more **Insured Person(s)** shall be deemed to have been made solely within the earliest of the following **Policy Years**: (1) the **Policy Year** in which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made, or (2) the **Policy Year** in which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** be deemed to have been made pursuant to Section IX. B., if applicable.

D. In the event that more than one **Insured Person** is included in the same **Claim**, the total amount of the available Limit of Liability shall be apportioned in proportion to their respective **Loss** and the retention shall be apportioned pro rata among the **Insured Persons**, unless otherwise mutually agreed upon by the **Insured Persons** and the Insurer.

E. A Retention shall apply to each and every **Claim** (including **Defense Costs**) and such Retention shall be borne by the **Insured Persons** and/or the **Company** uninsured and at their own risk.

The amount shown in Item 4. (a) of the Declarations shall be, subject to the exception noted below, the applicable Retention for each **Insured Person** per **Claim** under Insuring Agreement Section I.A. The total Retention for each **Claim** for all **Insured Persons** under Insuring Agreement Section I. A., shall not, subject to the exception noted below, exceed the amount shown in Item 4. (b).

The amount shown in Item 4. (c) of the Declarations shall be the applicable Retention for each **Claim** under Insuring Agreement Section I.B. Notwithstanding the aforementioned, the Retention amount shown in Item 4. (c) of the Declarations shall apply to any **Loss** resulting from any **Claim** if indemnification by the **Company** is required by law or if the **Company** could have indemnified its **Insured Persons** for such **Loss.**

For purposes of the preceding paragraph, it shall be assumed that the **Company's** bylaws contain an indemnity provision in a form as liberal to the **Insured Persons** as permitted by applicable law and the board of directors of the **Company** had voted in favor of the greatest measure of indemnification permitted **Insured Persons** for such **Loss.** The presumption created by the preceding paragraph shall apply, unless the **Company** is unable to make such actual indemnification solely by reason of its financial insolvency.

In the event that, under the above provisions, the Retention amounts in Items 4. (a) or 4. (b) and Item 4 (c) of the Declarations apply to different parts of the same **Claim**, the sum of the Retentions so applied shall constitute the Retention for each single **Claim**, provided however, the total Retention, as finally determined, shall in no event exceed the largest of the applicable Retentions.

### SECTION VII.   DEFENSE COSTS AND SETTLEMENTS.

A. The Insurer shall have no obligation to defend any **Claim** but shall pay, on the condition that it has given its written consent, the reasonable **Defense Costs** incurred by the **Insured Persons**, or the **Company** on behalf of the **Insured Persons**, in the defense of a **Claim** that is covered under the Policy. **Defense Costs** are part of **Loss** and are subject to the other provisions of this Policy governing payment by the Insurer of **Loss.**

The Insurer may establish and provide to counsel for the **Insured Persons** or the **Company**, guidelines for the handling of **Claims** covered under this policy. As a condition of the Insurer's obligation to pay on behalf the **Defense Costs**, counsel for the **Insured Persons** or the **Company** shall adhere to the guidelines in the defense of such **Claims**. The insurer shall not be obligated to pay **Defense Costs** that have been incurred without observance of the guidelines, or that otherwise are unreasonable.

B. Notwithstanding any other provisions of this Policy, and subject to applicable law, the Insurer shall have an obligation to pay **Defense Costs**, determined by the Insurer to be part of a covered loss, on a current basis. As a condition of any advance payments for **Defense Costs** the **Insured Persons** and the **Company** agree to repay to the Insurer any **Defense Costs** that are advanced if it is established that any such **Defense Costs** are not covered under this Policy.

C. The **Insured Persons** and/or the **Company** shall have the sole obligation under this Policy to retain defense counsel, which shall

D.   Neither the **Insured Persons,** nor the **Company** on behalf of any **Insured Persons,** shall admit any liability for or settle any **Claim** or incur any **Defense Costs** without the prior written consent of the Insurer, which consent shall not be unreasonably withheld. The Insurer shall not be liable for any admissions, settlements or **Defense Costs** to which it has not consented.

E.   The Insurer shall have the right but not the obligation to make any investigation it deems expedient and, with the consent of the **Insured Persons** against whom the **Claim** has been made or the **Company** on behalf of the **Insured Persons,** make settlement within the available Limit of Liability (whether above or below the applicable Retention). If the **Insured Persons,** or the **Company** on behalf of the **Insured Persons,** shall refuse to consent to any settlement recommended by the Insurer and shall act to contest or continue any actions or proceedings in connection with such **Claims,** then, subject to the available Limit of Liability and the applicable Retention, the Insurer's liability for all **Loss** in connection with such **Claim** shall not exceed the amount for which the **Claim** could have been settled, plus the reasonable **Defense Costs** incurred with the Insurer's consent up to the date of refusal to consent by the **Insured Persons** and/or the **Company.**

F.   It shall be the duty and responsibility of all **Insured Persons** and the **Company,** when acting for or on behalf of any **Insured Person,** as a condition precedent to any coverage under this Policy, (1) to assert all appropriate defenses and to take all steps in defense of any **Claim** made hereunder, including but not limited to, releasing or causing to be released to the Insurer any and all data and documents the Insurer may require to determine the existence or extent of the Insurer's obligation, and (2) to assert (if the Insurer requests) all claims for contribution or indemnification against any and all other culpable or potentially culpable persons, entities or organizations. All **Insured Persons** and the **Company,** when acting for or on behalf of any **Insured Person,** shall agree to conduct the defense of any **Claim** as if coverage under this Policy were not otherwise afforded.

G.   The **Insured Persons** and the **Company** hereby grant to the Insurer the right to associate itself in defense and settlement of any claim that appears reasonably likely to involve the Insurer.

## SECTION VIII.  ALLOCATION

If a **Claim** is made against both **Insured Persons** and the **Company,** or any other party whose liability is uninsured by the Policy, the **Insured Persons,** the **Company** and the Insurer agree to determine a fair and proper allocation of all amounts for which **Insured Persons** and the **Company,** or any other uninsured party, are jointly liable, including defense costs, settlements and judgments.

Allocation between **Insured Persons** and uninsured parties shall be determined in accordance with the following principles:

1.   The purpose of the allocation is to determine that portion of jointly incurred amounts constituting covered **Loss,** which the **Insured Persons** would incur in the absence of the incentive the Policy provides the **Company** to shift losses from itself to the **Insured Persons;**

2.   Accordingly, allocation may be appropriate regardless of how insured and uninsured parties structure defense arrangements, settlement agreements or other documents relevant to their respective liabilities;

3.   Allocation issues shall be resolved as soon as possible after they arise, though it may be appropriate to resolve allocation of **Defense Costs** before allocation of settlement responsibility or other amounts;

4.   Negotiation, with assistance from a mediator if necessary, is the preferred means of determining the appropriate allocation. If the parties are unable to agree, the appropriate allocation shall be determined by a binding arbitration upon demand of the Insurer, an **Insured Person** or the **Company;**

5.   In determining the appropriate allocation of **Defense Costs** or settlements, the parties, and any mediator or arbitrator, shall consider the following factors:

   a. The relative exposure of each insured and uninsured party to an adverse judgment, based on comparative fault principles;

   b. Risks, hazards and burdens, other than liability, to which each insured and uninsured party is exposed by the **Claim;**

   c. The relative benefits obtained by the insured and uninsured parties from any settlement.

## SECTION IX.  NOTICE OF CLAIM.

A.   The **Insured Persons** and the **Company** shall, as a condition precedent to their rights under this Policy, give the Insurer notice, in writing, as soon as practicable of any **Claim** and shall give the Insurer such information and cooperation as it may reasonably require.

B.   If, during the **Policy Period,** any **Insured Person** or the **Company** (1) receives written or oral notice from any party that it is the intention of such party to hold any **Insured Person** responsible for a specific alleged **Wrongful Act,** or (2) becomes aware of any circumstances that may give rise to a **Claim** against any **Insured Person** for a specific alleged **Wrongful Act;** and, as soon as practicable gives written notice of the potential **Claim** to the Insurer as referenced in subsections (1) and (2) above, which notice is in any event received by the Insurer no later than thirty (30) days following the end of the **Policy Period,** and such notice includes (1) the reasons for anticipating such a **Claim,** (2) the nature and date of the alleged **Wrongful Acts,** (3) the alleged injury, (4) the names of the potential claimants and any **Insured Person** involved in the alleged **Wrongful Acts,** and (5) the manner in which any **Insured Person** or the **Company** first became aware of the potential **Claim,** then any **Claim,** the potential of which was specifically identified as required above, shall, for the purpose of this Policy, be treated as a **Claim** made during the **Policy Period.**

C.   Notice hereunder shall be effective on the date of receipt by the Insurer at the address shown in Item 9. of the Declarations.

D.   In addition to furnishing the notice as provided in Section IX. A. and B., the **Insured Persons** and the **Company** shall, as soon as practicable, furnish the Insurer with copies of reports, investigations, pleadings and all other papers in connection therewith.

## SECTION X.  GENERAL CONDITIONS.

A.   <u>Death, Incompetency, Insolvency or Bankruptcy of</u> **<u>Insured Persons.</u>**

   This Policy shall, subject to all the terms and conditions of the Policy, cover **Loss** arising from a **Claim** or **Claims** made against the

**Claim** or **Claims** are based or against the legal representatives of the **Insured Persons** in the event of their incompetency, insolvency or bankruptcy.

Cancellation or Nonrenewal.

(1) This Policy may be canceled by the **Parent Company** for itself and as agent for the **Insured Persons** by written notice to the Insurer at the address shown in Item 9. of the Declarations. Such notice shall state when, thereafter, such cancellation shall be effective.

This Policy may also be canceled by or on behalf of the Insurer by delivering to the **Parent Company** or by mailing to the **Parent Company** by certified mail, return receipt requested, at the **Parent Company's** last known address as shown in Item 2. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice, and this Policy shall terminate at the date and hour specified in such notice.

(2) If the Policy is canceled by the **Parent Company,** the Insurer shall retain the customary short rate portion of the premium.

If this Policy is canceled by or on behalf of the Insurer, the Insurer shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

(3) If the Insurer elects not to renew this Policy, the Insurer shall provide the **Parent Company** for itself and as agent for the **Insured Persons,** with no less than thirty (30) days advance notice thereof. If the period of limitation relating to the giving of notice is prohibited or made void by any law, such period shall be amended so as to be equal to the minimum period of limitation permitted by such law.

C.    Application Form.

It is agreed by the **Company** and **Insured Persons** that the particulars and statements contained in the Application Form and the attachments and materials submitted with the Application Form (which shall be retained on file by the Insurer and shall be deemed attached hereto, as if physically attached hereto) are true and are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the **Company** and the **Insured Persons** that such particulars and statements are material to the decision to issue this Policy and that the Policy is issued in reliance upon the truth of such particulars and statements.

All particulars and statements made in the Application Form and the attachments and materials submitted therewith shall be deemed to be made by each and every one of the **Insured Persons** provided, however, that except for any misstatements or omissions of which the signers of the Application Form are aware, any misstatement or omission in such Application Form or the attachments and materials submitted with it concerning a specified **Wrongful Act** by a particular **Insured Person** or his cognizance of any matter which he has reason to suppose might afford grounds for a future claim against him shall not be imputed, for purposes of any rescission of this Policy, to any other **Insured Persons** who are not aware of the omission or the falsity of the statement.

D.    Action Against the Insurer.

(1) No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and until the **Insured Persons'** obligation to pay shall have been finally determined either by an adjudication against the **Insured Persons** or by written agreement of the **Insured Persons,** claimant and the Insurer.

(2) No person or organization shall have any right under this Policy to join the Insurer as a party to any action against any **Insured Persons** nor shall the Insurer be impleaded by any **Insured Persons** or their legal representative.

E.    Reorganization/Cessation of Business.

If after the effective date of this Policy, the **Company** is involved in a transaction which is subject to the Federal Bank Merger Act or the Bank Holding Company Act of 1956 and amendments thereto or similar federal or state legislation ("Transaction"), and the **Company** is the assuming or resulting bank as a result of the Transaction, the premiums shall be adjusted and policy revisions shall be effected as required by the Insurer. The **Company** shall provide written notice to the Insurer as soon as practicable prior to the effective date of the Transaction together with such information as the Insurer may request.

If the **Company** is not the assuming or resulting bank as a result of the Transaction, and except as provided below for cessation of business, coverage shall cease as of the date of the Transaction and if the **Extended Reporting Period** is elected by the **Company,** the extension of coverage shall be limited to **Insured Persons** of the **Company** as it existed prior to the date of the Transaction.

If after the effective date of this Policy, the **Company** shall cease to engage in an active banking business or cease to accept deposits for any reason, coverage shall cease as of the date of the cessation of such business, and, absent a specific written agreement to the contrary, the **Company** shall not be entitled to obtain the extended coverage provided under Section II. of the Policy. For the purposes of this clause, the cessation of the business of banking shall include, but not be limited to, the appointment by any federal or state banking regulators of a receiver, liquidator or person in a similar capacity and any Transaction occurring at the request of any federal or state regulator. The **Company** shall provide written notice of such cessation of business to the Insurer as soon as practicable together with such information as the Insurer may request.

F.    Subsidiaries and Newly Acquired or Created Entities.

In the event of sale or dissolution of any subsidiary after the inception date of this Policy, or of any policy of which this Policy is a renewal, the Policy shall continue to apply, until the termination date of the Policy, to **Claims** for **Wrongful Acts** prior to the time of sale or dissolution. However, in the event of sale or dissolution, coverage shall cease as of the date of sale or dissolution for any actual or alleged **Wrongful Acts** occurring thereafter.

In the event that an entity is created or acquired after the Inception Date of this Policy, of which more than fifty percent (50%) of the voting stock is owned by the **Parent Company** either directly or through one or more of its Subsidiaries, coverage shall apply to the **Insured Persons** of such newly created or acquired entity for one hundred twenty (120) days following the creation or acquisition,

the condition that (1) written notice of the creation or acquisition, together with such information as the Insurer may request, is received by the Insurer at the address shown in Item 9. of the Declarations within one hundred twenty (120) days of the creation or acquisition; and (2) agreement by the Insurer to extend coverage to such newly created or acquired entity; and (3) premium adjustment and coverage revisions have been effected as required by the Insurer. Coverage for **Insured Persons** of such newly created or acquired entity shall not include any **Claim** based upon, arising out of directly or indirectly, resulting from or in consequence of, or in any way involving (1) any **Wrongful Act** occurring prior to the date such entity was created or acquired, or (2) any **Wrongful Act** occurring subsequent to the date such entity was created or acquired that, together with any **Wrongful Act** occurring prior to the date such entity was created or acquired, would constitute **Interrelated Wrongful Acts.**

G. Subrogation.

In the event of any payment under this Policy, the Insurer shall be subrogated, to the extent of such payment, to all the **Insured Persons'** and the **Company's** rights to recovery thereof, and the **Insured Persons** and the **Company** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the Insurer effectively to bring suit in the name of any **Insured Persons** or the **Company.**

H. Assignment.

Assignment of any interest under this Policy shall not bind the Insurer until its consent is endorsed hereon.

I. Conformity to Statute.

The terms of this Policy that are in conflict with the terms of any applicable laws construing this Policy are hereby amended to conform to such laws.

J. Entire Agreement.

By acceptance of this Policy, the **Insured Persons,** the **Company,** and the Insurer agree that the Policy (including the Application Form and all attachments and materials submitted with th Application Form) and any written endorsements attached heret constitute the entire agreement between the parties.

K. Authorization Clause.

By acceptance of this Policy, the **Parent Company** agrees to act on behalf of all **Insured Persons** with respect to the giving and receiving of notice of **Claim** or of termination, the payment of premiums, the receiving of any return premiums that may become due under this Policy, the acceptance of endorsements and the giving or receiving of any other notice provided for in this Policy; and the **Insured Persons** agree that the **Parent Company** shall act on their behalf.

L. Titles of Paragraphs.

The titles of the varied paragraphs of this Policy and endorsements, if any, attached to this Policy, are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

M Marital Estate Extension.

This Policy shall cover loss arising from any **Claim** against the spouse of an **Insured Person** for **Claims** arising solely out of his or her status as spouse of such **Insured Person.** Spouse shall mean any lawful wife or husband of the **Insured Person** whether by statutory, common law, or otherwise. This clause shall not afford coverage for any **Claim** arising from any actual or alleged **Wrongful Act(** of the spouse. This Policy shall apply only to actual or alleged **Wrongful Act(s)** of the **Insured Persons** subject to the full Policy terms and conditions.

This Policy shall not be valid unless countersigned on the Declarations by a duly authorized representative of this Insurer.



**SECRETARY**                                          **PRESIDENT**

**BancInsure ®**

**BancInsure**
5005 N. Lincoln Blvd.



**BANCINSURE**
5005 N. Lincoln Blvd.
P. O. Box 26104
Oklahoma City, Oklahoma 73126-0104

(405) 290-5679


SECURITY PACIFIC BANK
845 NORTH EUCLID AVE.
ONTARIO, CA   91762-

Dear Sir/Madam


Welcome to BancInsure! We appreciate your business, and we want to provide you with information on how to report a claim, in the event that it becomes necessary.

Claims can be reported by either of the following methods:

   1.   You can report claims to your own agent or broker who represents BancInsure.

   2.   You can report claims directly to the BancInsure claim office, by mail at the above address or you can utilize our toll-free WATS line:

                    1 800 682-1630

       *******   IMPORTANT NOTICE / CHANGE TO POLICY   *******

In order to control the spiraling cost of litigation and to allow BancInsure to continue to provide the Bank and Insured Persons with the broadest coverage available at a reasonable cost, the following new language has been incorporated in the Directors' & Officers' Liability Insurance Policy Including Bank Reimbursement under SECTION VII. DEFENSE COSTS AND SETTLEMENTS.

A.
The insurer may establish and provide to counsel for the Insured Persons or the Company, guidelines for handling of Claims covered under the policy.  As a condition of the Insurer's obligation to reimburse (pay on behalf of Insured Persons) Defense Costs, counsel for the Insured Persons or the Company shall adhere to the guidelines in the defense of such Claims.  The insurer shall not be obligated to pay Defense Costs that have been incurred without observance of the guidelines, or that otherwise are unreasonable.



Attached is a copy of BANCINSURE, INC. GUIDELINES FOR HANDLING
DIRECTORS & OFFICERS LIABILITY INSURANCE CLAIMS which sets out
BancInsure's expectation of counsel retained to defend the Bank or
Insured Persons for a covered claim.  The guidelines will be sent
to defense counsel when BancInsure approves the selection of such
counsel, and defense counsel will be expected to strictly adhere to
the guidelines.

If you have any questions, suggestions or problems we could assist
you with, please do not hesitate to call the undersigned (utilizing
the above WATS line) or any other member of the management team at
any time.


Sincerely,

BANCINSURE


Jim Cross
Claims Manager


INSURED ORIGINAL



BANCINSURE, INC. GUIDELINES FOR HANDLING
DIRECTORS & OFFICERS LIABILITY INSURANCE CLAIMS

BancInsure has the right under the Directors' & Officers' Liability
Insurance Policy ("Policy") to approve counsel retained by the Insured
Persons or the Company to represent the Insured Persons or the Company
in matters which are or may be covered by the Policy.  BancInsure is
obligated to pay on behalf of the Insured Persons or the Company only
for those reasonable defense costs incurred in defending covered claims.
These Guidelines have been developed by BancInsure to set forth in
greater detail BancInsure's expectations for the defense of the Insured
Persons or the Company in such matters.

1. RETENTION OF COUNSEL

BancInsure will approve counsel that have demonstrated expertise in the
representation of banks or other financial institutions.  BancInsure
expects counsel to be knowledgeable and competent to handle all aspects
of the matters for which counsel is retained.

BancInsure may establish a list of approved counsel ("BancInsure Approved
Counsel") from which the Insured Persons or the Company may select
counsel to represent the Insured Persons or the Company pursuant to
Section VII of the Policy.

If the Insured Persons or the Company elects to retain counsel other than
BancInsure Approved Counsel, the Insured Persons or the Company shall
promptly forward to BancInsure all pertinent information regarding such
counsel, including counsel's experience, qualifications and billing
arrangements.  A condition of BancInsure's approval of counsel is that
counsel will adhere to BancInsure's Guidelines for litigation management.

2. INITIAL RESPONSE, EVALUATION AND REPORTING.

It is the responsibility of the Insured Persons or the Company to retain
counsel to defend themselves or it on claims covered by the Policy.  In
the event the Insured Persons or the Company retain BancInsure Approved
Counsel, the attorney-client relationship will nonetheless be between the
Insured Persons or the Company and the counsel selected.

The Insured Persons or the Company and their counsel shall take all steps
appropriate to the defense of the matter, including responding to the
complaint, making preliminary motions to dismiss if appropriate, and
conducting an initial investigation of the circumstances of the matter.

Within 60 days of being retained, counsel shall forward to BancInsure its
initial impressions and evaluation of the matter, including to the extent
feasible the likely outcome.

Also within 60 days of being retained, counsel shall submit a detailed
estimate of the anticipated costs of defense of the particular matter, and



an outline of how counsel expects the defense of the matter to proceed. Such estimate shall be updated from time to time if and as circumstances warrant.

BancInsure expects to receive evalutaions from counsel on the merits of the matter from time to time as circumstances warrant. Routine submissions of non-substantive reports is discouraged. Rather, counsel should report significant developments, and comment on the impact of such developments on the likely outcome of the matter, as they occur.

3. STAFFING.

BancInsure expects that counsel will provide high quality representation to the Insured Persons or the Company in a manner which is cost efficient and which takes into account the significance and likely outcome of the matter.

BancInsure expects that counsel will reasonably staff matters.  In particular, BancInsure anticipates that one attorney will be primarily responsible for a matter, and that one attorney will handle a matter from beginning to end.  BancInsure disapproves of multiple attorneys appearing at depositions, motion hearings, or trial, and such multiple attendance must be approved in writing in advance.  Matters that can be assigned to other attorneys and associates in order to achieve cost savings should be so assigned.

4. PRE-TRIAL LITIGATION.

BancInsure expects to receive, within 60 days of counsel's retention, an initial litigation plan which details how counsel anticipates conducting the defense of the matter.  This outline should be updated as circumstances require.

Pretrial motions, including motions for summary judgment, are encouraged if such motions are useful to the defense of the matter, either through the early termination of litigation or gaining other tactical advantage. Routine filing of motions without consideration of their usefulness is discouraged.  Counsel should use his or her best judgment in evaluating the costs and benefits of a particular motion. Counsel should review pretrial dispositive motions with BancInsure prior to filing.

Unnecessary discovery must be avoided.  Counsel should conduct only that discovery which is reasonably necessary to the defense of the Insured Persons or the Company, and should avoid repetitive, harassing, or only marginally useful discovery.

Extraordinary research projects [i.e. projects which require more than five hours of billable time] must be approved by BancInsure in advance. Counsel should provide BancInsure with a description of the research to be done, the need for the research and the expected expense of the research. BancInsure will not pay premium billing or "value added billing"



for research done for different matter that might be useful for the present matter.

Experts or consultants should not be retained without prior consultation and approval by BancInsure.

5. TRIAL.

No later than 30 days before scheduled trial, counsel shall provide BancInsure with a detailed assessment of the case including probable outcome, length of trial, material issues to be determined at trial, strategy, likely performance of witnesses, chances of settlement and any other pertinent information.

6. FEES, EXPENSES AND BILLING.

Statements for services must be remitted no less frequently than monthly. "Lump sum" billing statements, which do not provide sufficiently detailed descriptions of each time entry will not be honored.

BancInsure Approved Counsel will have a preapproved hourly rate for fees. If the Insured Persons or the Company retains counsel other than Banc-Insure Approved Counsel, billing rates shall not exceed the rates custom-arily charged in the locale for the type of service rendered. Hourly rates must be approved in advance by BancInsure. "Premium" billing or "value added" billing is not acceptable.

Counsel shall adhere to the agreed upon billing rate throughout the matter. BancInsure will not accept routine increases in billing rates. Any request for an increase in billing rates must be submitted and approved in writing prior to the work for which such increase is first applied.

BancInsure will not accept charges for items customarily included in firm overhead, such as secretarial time, rent, fax charges and the like. Photocopying costs shall be incurred at cost without markup.

BANCINSURE, INC.



(A stock insurance company incorporated under the laws of the
state of Oklahoma, hereinafter called the Insurer.)

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
INCLUDING COMPANY REIMBURSEMENT

DECLARATIONS

Policy Number: 04DO00378-2

ITEM 1. Parent Company:
        SECURITY PACIFIC BANCORP
        SECURITY PACIFIC BANK

ITEM 2. Principal Address:
        845 NORTH EUCLID AVE.
        ONTARIO, CA   91762-
        See Additional Insured Schedule

THIS IS A CLAIMS-MADE POLICY.  Except as otherwise provided herein, this
Policy covers only Claims first made against the Insured Persons, and
reported to the Insurer, during the Policy Period.  This Policy does not
provide for any duty by the Insurer to defend those insured under the
Policy.  Please read carefully.

ITEM 3. Limit of Liability (INCLUSIVE OF DEFENSE COSTS)

        Aggregate Limit of Liability Each Policy Year:  $6,000,000.00

ITEM 4. Retention (See Section VI. E.)

        (a) $0.00

        (b) $0.00

        (c) $25,000.00

ITEM 5. Policy Period:  Inception Date:   From 12:01 a.m. on 01/26/2007
                        Expiration Date:  To   12:01 a.m. on 01/26/2010
                        Local time at the address shown in Item 2.

ITEM 6. Extended Reporting Period

        (a) Additional Premium:  75% of the Annual Premium

        (b) Additional Period:   12 Months

ITEM 7. Endorsement(s) Effective at Inception:
                  See Endorsement Schedule

BI-DO-DEC (011999)                    Page 1 of 3



ITEM 8. Other Coverages -
        Limit of Liability (Inclusive of Defense Costs) - Retention

|  | Aggregate Limit of Liability Each Policy Year | Retention |
|---|---|---|
| Lender Liability Additional Coverage | $5,000,000.00 | $25,000.00 |
| Employment Practices | $5,000,000.00 | $25,000.00 |
| Bankers Errors and Omissions | $5,000,000.00 | $25,000.00 |

ITEM 9. Notices required to be given to the Insurer under the Policy
        shall be addressed to:

                    BancInsure, Inc.
              5005 North Lincoln Boulevard
                 Post Office Box 26104
             Oklahoma City, Oklahoma  73126-0104

                                           Telephone Number

        Claims Department                  (405) 290-5679
        Customer Service Department        (405) 290-5678

ITEM 10.  Three Year Premium       $76,013.00

          Terrorism Certified Acts Premium of  $764.00 is included in
          the above total.

ITEM 11.  The Insured by the acceptance of this policy gives notice to
          the Insurer terminating or canceling prior policy(ies)
          No.(s) 04DO00378-1 such termination or cancelation to be
          effective as of the time this policy becomes effective.

BI-DO-DEC (011999)            Page 2 of 3



Policyowner Service Call (405) 290-5678.

These Declarations along with the completed and signed Application Form (including all attachments and materials submitted with the Application Form) and the Directors and Officers Liability Insurance Policy Including Company Reimbursement shall constitute the contract between the Insured Persons and the Company on the one hand and the Insurer on the other hand.

IN WITNESS WHEREOF, the Insurer issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

Morgan Gerhards
CA LIC # 0F20684   4.17.07

_____
COUNTERSIGNATURE/DATE

BI-DO-DEC (011999)                Page 3 of 3
MCROY
03/28/2007

INSURED ORIGINAL



Additional Named Insureds Schedule

Policy No. 04DO00378-2

SECURITY PACIFIC BANCORP EMPLOYEES

   SAVINGS & RETIREMENT PLAN

SECURITY PACIFIC CREDIT CORP.

GOLDEN PACIFIC EQUITIES (INACTIVE)

BI-DO-0001

INSURED ORIGINAL



Endorsement Schedule

Policy No. 04D000378-2

| Endorsement No. | Description |
|---|---|
| BI-DO-CA-101(091998) | CANCELLATION OR NONRENEWAL |
| BI-DO-00400 | COVERAGE REVISION ENDORSEMENT |
| BI-TRIA 02 11 02 | TERRORISM NOTICE TO POLICYHOLDERS |
| BI-DO-00302B | FIDUCIARY LIABILITY FOR EMPLOYEES ENDT |
| BI-DO-00303 | IRA/KEOGH COVERAGE |
| BI-DO-00316 | REGULATORY EXCLUSION ENDORSEMENT |
| BI-DO-00311 (081998) | NOT FOR PROFIT ORGANIZATIONS COVERAGE |
| BI-DO-00326 (199) | EMPLOYMENT PRACTICES LIABILITY ENDORSEMENT |
| BI-DO-00337 (03/03) | BANKERS ERRORS AND OMISSIONS |
| BI-DO-00330 | LIMIT OF LIABILITY AND RETENTION ENDT |
| BI 21 70 11 02 | CAP ON LOSSES FROM CERTIFIED ACTS |
| BI 21 76 11 02 | EXCLUSION OF PUNITIVE DAMAGES |
| BI 21 20 01 05 | CONDITIONAL EXCLUSION OF TERRORISM |
| BI 28 13 01 05 | EXTENDED REPORTING PERIOD FOR TERRORISM |
| BI 09 04 01 05 | DISCLOSURE OF PREMIUM FOR TERRORISM |
| CNDT 00 01 01 05 | POTENTIAL RESTRICTIONS OF TERRORISM |
| BI-DO-00338 (042003) | LENDER LIABILITY WITH GUARANTOR |

Page No 1 of 1

BI-DO-SCHEDULE(0695)

INSURED ORIGINAL



BANCINSURE, INC.
(A stock insurance company incorporated under the laws of the state
of Oklahoma, hereinafter called the Insurer.)

CALIFORNIA CHANGES
CANCELLATION OR NONRENEWAL ENDORSEMENT

This endorsement modifies SECTION IX.  GENERAL CONDITIONS., B.
Cancellation or Nonrenewal of the policy to which it is attached.
The following is added and supersedes any provision to the contrary.

B. Cancellation or Nonrenewal.
   1. Cancellation
      If this policy has been in effect for sixty (60) days or more or
      is a renewal policy, the Insurer may cancel this policy after the
      effective date of the policy upon one or more of the following
      reasons:

      A. Nonpayment of premium, including payment due on a prior policy
         issued by the Insurer and due during the current policy term
         covering the same risk.

      B. Discovery of fraud or material misrepresentation by either of
         the following:

         1. The Company or Company's representative in obtaining the
            insurance;
         2. The Company or Company's representative in pursuing a claim
            under the policy.

      C. A judgment by a court or an administrative tribunal that the
         Company has violated any law of this state or of the United
         States having as one of its necessary elements an act which
         materially increases any of the risks insured against.

      D. Discovery of willful or grossly negligent acts of omissions or
         of any violations of state laws or regulations establishing
         safety standards, by the Company or the representative, which
         materially increase any of the risks insured against.

      E. Failure by the Company or Company's representative to implement
         reasonable loss control requirements which were agreed to by the
         insured as a condition of policy issuance or which were condi-
         tions precedent to the use by the Insurer of a particular rate
         or rating plan, if the failure materially increases any of the
         risks insured against.

      F. A determination by the commissioner that the loss of, or changes
         in, an Insurer's reinsurance covering all or part of the risk
         would threaten the financial integrity or solvency of the
         Insurer.

BI-DO-CA-101 (091998)        Page 1 of 2



G. A determination by the commissioner that a continuation of the policy coverage would place the Insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the Insurer.

H. A change by the Company or the Company's activities or property to the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

I. The Insurer will mail or deliver written notice of cancellation stating the effective date of cancellation and the reason for cancellation, to the Parent Company named in ITEM I. of the Declarations at least:

   1. Ten (10) days before the effective date of cancellation if the Insurer cancels for a reason listed in SECTION IX. GENERAL CONDITIONS. B. Cancellation or Nonrenewal. 1.A. or B.
   2. Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason listed in SECTION IX. GENERAL CONDITIONS. B. Cancellation or Nonrenewal., 1.

2. Nonrenewal
If the Insurer decides not to renew this policy the Insurer will mail or deliver written notice stating the reason for nonrenewal to the Parent Company named in Item 1 of the Declarations, to the last known address as shown on the Declarations at least:

A. Sixty (60) days, but not more than one hundred twenty (120) days before the expiration or anniversary date, if the Insurer intends not to renew the policy, or to condition renewal upon reduction of limits, elimination of coverages, increase in deductible, or increase of more than 25 percent in the rate upon which the premium is based.

B. Failure by the Insured to give notice pursuant to 2.A above shall mean that the policy of insurance shall be continued, with no change in its terms or conditions, for a period of sixty (60) days after the Insurer gives the notice.

Nothing herein contained shall be held to vary, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy other than as above stated.  This endorsement, which forms a part of and is for attachment to the following described policy issued by the Insurer designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

Policy No.
  04DO000378-2

Countersigned by_____

BI-DO-CA-101 (091998)    Page 2 of 2    Authorized Representative



BANCINSURE, INC.
(A stock insurance company incorporated under the laws of the state of Oklahoma, hereinafter called the Insurer.)

DIRECTORS' AND OFFICERS' LIABILITY
INSURANCE POLICY INCLUDING BANK REIMBURSEMENT

COVERAGE REVISION ENDORSEMENT

1.  It is understood and agreed that SECTION IV. DEFINITIONS. H. "Loss" as set forth in this policy, is deleted and the following definition is substituted therefore:

   H. "Loss" shall mean any amount that the Insured Persons are legally obligated to pay for any Claim or Claims made against them for Wrongful Acts as to which coverage applies, and shall include but not be limited to damages, judgements, settlements, and reasonable Defense costs, provided always, however, such Loss shall not include regular or overtime wages, salaries or fees of the directors, officers or employees of the Company, fines or penalties imposed pursuant to law, or matters that may be deemed uninsurable under the law pursuant to which the Policy shall be construed. This definition shall include punitive or exemplary damages incurred by the Insured Persons to the extent such damages are insurable under applicable law.

2.  It is understood and agreed that SECTION V. EXCLUSIONS. 8. as set forth in this policy is deleted and the following exclusion is substituted therefore:

   8. bodily injury, mental anguish, emotional distress, sickness, disease or death of any person, or damage to or destruction of any tangible property including loss of the use thereof; provided this exclusion shall not apply with respect to any actual or alleged mental anguish or emotional distress in any Claim by a past, present or prospective employee of the Company for any unlawful discrimination against any Insured Person or any wrongful termination of employment action brought by a former officer of the Company against any Insured Person.

3.  It is understood and agreed that SECTION V. EXCLUSIONS. Note as set forth in this policy is deleted and the following is substituted therefore:

   NOTE: No fact pertaining to or knowledge possessed by any Insured Person shall be imputed to any other Insured Person for purposes of applying the exclusions set forth in this Section V.

BI-DO-00400 (102000)        Page 1 of 3

INSURED ORIGINAL



4.  It is understood and agreed that SECTION VII. DEFENSE COSTS AND
    SETTLEMENTS. SUB-SECTION E. is deleted and the following is sub-
    stituted therefore:

    The Insurer shall have the right but not the obligation to make
    any investigation it deems expedient and, with the consent of the
    Insured Persons against whom the Claim has been made or the
    Company on behalf of the Insured Persons, make settlement within
    the available Limit of Liability (whether above or below the
    applicable retention). If the Insured Persons, or the Company on
    behalf of the Insured Persons, shall refuse to consent to
    any settlement recommended by the Insurer and shall act to
    contest or continue any actions or proceedings in connection
    with such Claims, then, subject to the available Limit of
    Liability and the applicable Retention, the Insurer's liability
    for all Loss in connection with such Claim shall not exceed:

    (1) the amount for which the Claim could have been settled, plus
    (2) the reasonable Defense Costs incurred with the Insurer's
        consent up to the date of refusal to consent by the Insured
        Persons and/or the Company, plus
    (3) 50% of the covered Loss, including reasonable Defense Costs,
        incurred after the date such settlement was proposed in
        writing by the Insurer to the Insured Persons and/or Comp-
        any, in excess of the amount for which the Insurer could
        have settled such Claim. This subpart (3) shall not apply if
        the proposed settlement amount does not exceed the appli-
        cable Retention set forth in Item 4. of the Declarations.

5.  It is understood and agreed that SECTION X. GENERAL CONDITIONS. SUB-
    SECTION B. (1) Cancellation or Nonrenewal, the second paragraph is
    deleted and the following is substituted therefore:

    This Policy may also be canceled by or on behalf of the Insurer
    by delivering to the Parent Company or by mailing to the Parent
    Company by certified mail, return receipt requested, at the
    Parent Company's last known address as shown in Item 2. of the
    Declarations, written notice stating when, not less than ninty
    (90) days thereafter, the cancellation shall be effective. The
    mailing of such notice as aforesaid shall be sufficient proof of
    notice, and the Policy shall terminate at the date and hour
    specified in such notice.

6.  It is understood and agreed that SECTION X. GENERAL CONDITIONS. SUB-
    SECTION E. Reorganization/Cessation of Business, the second paragraph
    is deleted and the following is substituted therefore:

BI-DO-00400 (102000)          Page 2 of 3



If the Company is not the assuming or resulting bank as a result of the Transaction, and except as provided below for cessation of business, coverage under this Policy shall continue until the expiration date of this Policy as noted in Item 5. of the Declaration, but only with respect to Claims for Wrongful Acts committed prior to the Transaction. The Company shall not be entitled to elect the extended coverage provided under Section II. of the Policy if coverage under the Policy is allowed to continue as described above unless the Parent Company elects to cancel the Policy within ninety (90) days from the effective date of the Transaction and elects the extended coverage as provided under Section II. If the Policy is canceled and if the Extended Reporting Period is elected by the Company, the extension of coverage shall be limited to Insured Persons of the Company as it existed prior to the date of the Transaction.

7. It is understood and agreed that SECTION X. GENERAL CONDITIONS. SUB-SECTION F. Subsidiaries and Newly Acquired or Created Entities., the following paragraph is to be inserted after the second paragraph:

If the fair value of the assets of the acquired or created entity described above is less than 25% of the combined total assets of the Company as reflected in the most recent financial statements, such acquired or created entity shall automatically be covered under this Policy, but only with respect to Claims for Wrongful Acts committed after such acquisition or creation. The Insurer may consider providing coverage for Wrongful Acts committed prior to such acquisition or creation after presentation and review of a complete application and all appropriate information subject to premium and coverage revisions.

Policy No.
 04DO000378-2

Countersigned by _____
                  Authorized Representative



## IMPORTANT NOTICE TO POLICYHOLDERS
### OFFER OF TERRORISM COVERAGE

You are hereby notified the Terrorism Insurance Act of 2002, effective November 26, 2002, establishes a program within the Department of the Treasury under which the Federal government shares with the insurance industry the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provide that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States.

The United States Government, Department of the Treasury will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

In accordance with the Terrorism Risk Insurance Act of 2002, we are required to offer you coverage for losses resulting from an act of terrorism that is certified under the federal program as an act of terrorism commited by an individual(s) acting on behalf of a foreign person or foreign interest. The policy's other provisions will still apply to such an act. Your decision is needed on these questions: do you choose to pay the premium for terrorism coverage stated in this offer of coverage, or do you reject the offer of coverage and not pay the premium?

DISCLOSURE OF PREMIUM

If you choose to accept this offer of coverage, the premium for terrorism coverage as defined in the Act is 1% of the total annual premium.

The premium is due thirty (30) days from receipt of this Notice. Failure to pay premium by the due date will constitute rejection of the offer and your policy will be written to exclude the described coverage.

You may choose to reject the offer by signing this form and returning it to us, and your policy will be written to exclude the described coverage.

REJECTION STATEMENT

_____    I hereby reject the offer of terrorism coverage. I understand that an exclusion of certain terrorism losses will be made part of this policy.

                    Issued to:
                    SECURITY PACIFIC BANK

_____            Policy No.
Signature of Insured                       04DO00378-2

_____            _____
Print Name/Title                           Date

INSURED ORIGINAL



BANCINSURE, INC.
(A stock insurance company incorporated under the laws of the State of
Oklahoma, hereinafter called the Insurer.)

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
INCLUDING COMPANY REIMBURSEMENT

FIDUCIARY LIABILITY FOR EMPLOYEES ENDORSEMENT

This endorsement modifies SECTION V. EXCLUSIONS. Subsection 9. of the
policy to which it is attached.  The following is added and supersedes
any provision to the contrary.

It is understood and agreed that the insurance provided is extended to
include coverage for Loss arising out of the Wrongful Acts of the
Insured Persons or employees of the Company serving in their capacities
as fiduciaries for pension or welfare plans sponsored by the Company.

For purposes of the coverage added by this endorsement, the Insurer
shall not be liable for any Claim based upon or attributable to any
failure or omission on the part of such fiduciaries to effect and
maintain insurance or bonds required by law, or established as a
standard by any regulatory or industry body.

It is also understood and agreed that the extension of coverage to
employees afforded by this endorsement is limited to the above pro-
visions and is not to be interpreted as providing coverage beyond the
scope of this endorsement.

The Insurer's maximum aggregate liability for all Loss (including
defense costs) arising out of all Claims made during the Policy Year
under this endorsement shall be $5,000,000.00.

All payments of Loss under this endorsement shall reduce the Limit of
Liability available to pay Losses under the Policy to which this
endorsement is attached.

Nothing herein contained shall be held to vary, waive or extend any of
the terms, conditions, provisions, agreements or limitations of the
above mentioned policy other than as above stated.

This endorsement, which forms a part of and is for attachment to the
following described policy issued by the Insurer designated therein,
takes effect on the effective date of said policy, unless another
effective date is shown below, at the hour stated in said policy and
expires concurrently with said policy.

Countersigned by _____

Policy No.                              Authorized Representative
  04DO000378-2

BI-DO-00302B (11/93)          Page 1 of 1

INSURED ORIGINAL



BANCINSURE, INC.
(A stock insurance company incorporated under the laws of the State of
Oklahoma, hereinafter called the Insurer.)

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
INCLUDING COMPANY REIMBURSEMENT

IRA/KEOGH COVERAGE ENDORSEMENT

It is understood and agreed that the insurance provided, subject to
Policy terms and conditions, is extended to include coverage for Loss
arising out of the Wrongful Acts of Insured Persons and the employees
of the Company serving as fiduciaries for the H.R. 10 Plans (Keogh
Plans) and/or Individual Retirement Accounts, where such activity is
a part of their regularly assigned duties under the limited trust
authority granted to the Company.

It is also understood and agreed that the "employee" coverage afforded
by this endorsement is limited to the above provision and is not to be
interpreted as providing coverage beyond the scope of this endorsement.

Nothing herein contained shall be held to vary, waive or extend any of
the terms, conditions, provisions, agreements or limitations of the
above mentioned policy other than as above stated.

This endorsement, which forms a part of and is for attachment to the
following described policy issued by the Insurer designated therein,
takes effect on the effective date of said policy, unless another
effective date is shown below, at the hour stated in said policy and
expires concurrently with said policy.

Policy No.
  04DO00378-2

Countersigned by _____
                  Authorized Representative

BI-DO-00303 (01/91)            Page 1 of 1

INSURED ORIGINAL



BANCINSURE, INC.
(A stock insurance company incorporated under the laws of the State of
Oklahoma, hereinafter called the Insurer)

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
INCLUDING COMPANY REIMBURSEMENT

REGULATORY EXCLUSION ENDORSEMENT

It is understood and agreed that SECTION V. EXCLUSIONS of the Policy
is hereby amended by the deletion of the following Exclusion:

12.   based in or upon any action or proceeding brought by or on
      behalf of any federal or state regulatory or supervisory
      agency or deposit insurance organization ("Agency").

      This exclusion shall include, but not be limited to, any
      type of legal action which any such Agency may bring as
      receiver, conservator, trustee, liquidator, rehabilitator
      or in any capacity, whether such action or proceeding is
      brought in the name of such Agency or by or on behalf of
      such Agency in the name of any other entity or solely in
      the name of any third party;

Notwithstanding the Limit of Liability provided by the Policy to
which this endorsement is attached, the Insurer's maximum aggregate
liability for all Loss (including defense costs) arising out of all
Claims made during the Policy Year as a result of any action or
proceeding brought by or on behalf of any federal or state regulatory
or supervisory agency or deposit insurance organization shall be
$6,000,000.00.

All payments of Loss under this endorsement shall reduce the Limit of
Liability available to pay Losses under the Policy to which this
endorsement is attached.

Nothing herein contained shall be held to vary, waive or extend any of
the terms, conditions, provisions, agreements or limitations of the
above mentioned policy other than as above stated.

This endorsement, which forms a part of and is for attachment to the
following described policy issued by the Insurer designated therein,
takes effect on the effective date of said policy, unless another
effective date is shown below, at the hour stated in said policy and
expires concurrently with said policy.

Policy No.
  04D000378-2

                    Countersigned by _____
                                     Authorized Representative

BI-DO-00316 (07/92)          Page 1 of 1

INSURED ORIGINAL



BANCINSURE, INC.
(A stock insurance company incorporated under the laws of the State of
Oklahoma, hereinafter called the Insurer.)

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
INCLUDING COMPANY REIMBURSEMENT

NOT-FOR-PROFIT ORGANIZATIONS COVERAGE

It is understood and agreed that the definition of the term "Insured
Capacity(ies)," as set forth in the Definitions section of this
policy, is deleted and the following definition is substituted there-
fore:

M.  "Insured Capacity(ies)" means the directors and officers of
    the Company named in Item 1. of the Declarations and shall
    not include the position of director or officer of any entity
    other than the Company except any not-for-profit organi-
    zation:

    (1)  Where such services are part of such director or
         officer's regularly assigned duties with the Company;
         and

    (2)  Only to the extent that coverage provided hereunder is
         in excess of any indemnification provided by, or of
         coverage under any other policy or policies of insurance
         of, such not-for-profit organization.

Nothing herein contained shall be held to vary, waive or extend any of
the terms, conditions, provisions, agreements or limitations of the
above mentioned policy other than as above stated.

This endorsement, which forms a part of and is for attachment to the
following described policy issued by the Insurer designated therein,
takes effect on the effective date of said policy, unless another
effective date is shown below, at the hour stated in said policy and
expires concurrently with said policy.

Policy No.
  04DO000378-2

Countersigned by _____
                 Authorized Representative

BI-DO-00311 (081998)          Page 1 of 1

INSURED ORIGINAL



## BANCINSURE, INC.

(A stock insurance company incorporated under the laws of the state of
Oklahoma, hereinafter called the Insurer.)

### DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
### INCLUDING COMPANY REIMBURSEMENT

### EMPLOYMENT PRACTICES LIABILITY ENDORSEMENT

**SECTION I.   Insuring Agreement**

In consideration of the additional premium paid and in reliance upon
all statements made in the application, which is hereby made a part of
this endorsement, it is agreed that the Basic Policy is amended (subject
to the terms and conditions set forth in this endorsement) to pay on
behalf of the Insured, Loss in excess of the applicable Retention amount
shown in Item 8 of the Declarations up to the applicable Aggregate
Limit of Liability shown in Item 8 of the Declarations, which the Insured
shall become legally obligated to pay, provided Claim or Claims for such
Loss is first made against the Insured and is reported to the Insurer
while this endorsement is in force, and that such Claim or Claims have
arisen out of any Employment Practices Wrongful Act.

**SECTION II.  Definitions**

It is understood and agreed that for the purposes of this endorsement
only, the Definitions section of the Basic Policy is amended by the
the addition of the following items.

A.  "Insured" means any entity named in Item 1. of the Declarations of
    the Basic Policy and its directors and Employees acting within the
    scope of their employment.

B.  "Basic Policy" shall mean the Directors and Officers Liability
    Insurance Policy to which this endorsement is attached.

C.  "Employment Practices Wrongful Act" shall mean any actual or alleged
    act, error or omission committed by an Insured which results in a
    Claim or Claims by a past, present or prospective Employee for any
    actual or alleged refusal or failure to employ, termination of
    employment, coercion, demotion, evaluation, reassignment, discipline,
    defamation, Sexual Harassment, humiliation, Discrimination, or other
    employment related practices or policies.

D.  "Interrelated Employment Practices Wrongful Act" shall mean
    Employment Practices Wrongful Acts which have as a common nexus any
    fact, circumstance, situation, event, transaction or series of
    facts, circumstances, situation, events or transactions.

INSURED ORIGINAL



E.  "Sexual Harassment" shall mean unwelcome sexual advances and/or requests for sexual favors and/or verbal or physical conduct of a sexual nature that violates any law designed to prohibit such conduct.

F.  "Discrimination" shall mean termination of an employment relation-ship or demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy or national origin or other basis prohibited by applicable law.

G.  "Employee" shall mean an individual whose labor or service is engaged by and directed by an Insured.  This includes part-time, seasonal and temporary employees as well as any individual employed in supervisory, managerial or confidential positions.  Independent contractors are not employees.

SECTION III. Limit of Liability

A.  The Insurer's maximum aggregate liability for all Loss under this endorsement (including Defense Costs) arising out of all Claims made during the Policy Year shall be the Aggregate Limit of Liability shown in Item 8 of the Declarations.  The Aggregate Limit of Liabil-ity available under this endorsement is part of, not in addition to, the Aggregate Limit of Liability for the Basic Policy shown in Item 3 of the Declarations.  All payments of Loss under this endorsement shall reduce the Aggregate Limit of Liability available to pay loss under the Basic Policy.  All payments of Loss under the Basic Policy shall reduce the Aggregate Limit of Liability available to pay Loss under this endorsement.

B.  The Insurer, subject to the Limit of Liability set forth above, shall pay one hundred percent (100%) of any Loss (including Defense Costs) in excess of the applicable Retention set forth in Item 8 of the Declarations.

SECTION IV.   Exclusions

It is further understood and agreed that for the purposes of this endorsement only, all Exclusions contained in or attached by endorsement to the Basic Policy, except Exclusion 5 and Exclusion 11, as it relates to claims against the Insured Persons by any other Insured Person, apply to coverage provided under this endorsement.  In addition, the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured, based upon, arising out of , relating to, in consequence of, or in any way involving:

A. Any liability arising out of any obligation under a workers' compen-sation, disability benefits or unemployment compensation law or any similar act.

INSURED ORIGINAL



B.  Any liability arising out of the willful failure to comply with any law or any governmental or administrative order or regulation relating to employment practices by the Insured or with the Insured's consent.  Willful means acting with reckless disregard of such laws or employment related orders or regulations.

C.  The assumption of another's liability for an Employment Practices Wrongful Act in a contract or agreement.  This exclusion will not apply to liability for damages because of an Employment Practices Wrongful Act that the Insured would have without the contract or agreement.

D.  Any liability imposed upon the Insured under the Employment Retirement Security Act of 1974, Public Law 93-405, or any amendments thereto.

E.  Any liability arising out of a lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations.

F.  Any liability arising out of the Workers' Adjustment and Retraining Notification Act, Public Law 100-379(1988), or any amendments thereto, or any similar federal, state or local law.

It is understood and agreed that Exclusions A. through F. above apply only to the coverage provided herein and do not apply to any other insurance coverage provided by the Basic Policy, unless included thereunder.  No fact pertaining to the knowledge possessed by any Insured shall be imputed to any other Insured for the purpose of determining the availability of coverage for, or with respect to Claims made against, any Insured.

SECTION V.  General Conditions

It is further understood and agreed that for the purposes of this endorsement only, the General Conditions section of the Basic Policy is amended by the addition of the following items:

A.  The definitions set forth in this endorsement shall apply to this endorsement only and not the Basic Policy, however provided, the definitions set forth in SECTION IV. DEFINITIONS of the Basic Policy shall also apply to this endorsement;

B.  The phrase "Employment Practices Wrongful Act" shall be substituted for the phrase "Wrongful Act", the phrase "Interrelated Employment Practices Wrongful Act" shall be substituted for the phrase "Interrelated Wrongful Act", the word "endorsement" shall be substituted for the word "policy", and the word "Insured" shall be substituted for the phrases "Insured Persons" and/or "Company" throughout the Basic Policy.

BI-DO-00326 (011999)        Page 3 of 4



C.   SECTION I. INSURING AGREEMENTS (A) AND (B) of the Basic Policy
     shall not apply hereto;

D.   In the event of the cancellation of the Basic Policy, this endorse-
     ment shall automatically be canceled at the time and on the same
     terms as the Basic Policy.

Nothing herein contained shall be held to vary, waive or extend any of
the terms, conditions, provisions, agreements or limitations of the
Basic Policy other than as above stated.

This endorsement, which forms a part of and is for attachment to the
following described policy issued by the Insurer designated therein,
takes effect on the effective date of said policy, unless another
effective date is shown below, at the hour stated in said policy and
expires concurrently with said policy.

Policy No.
  04D000378-2

Countersigned by _____
                       Authorized Representative

BI-DO-00326 (011999)        Page 4 of 4

                            INSURED ORIGINAL



BANCINSURE, INC.
(A stock insurance company incorporated under the laws of the state of Oklahoma, hereinafter called the Insurer.)

Directors and Officers Liability Insurance Policy
Including Company Reimbursement

Bankers Errors and Omissions Endorsement

SECTION I. INSURING AGREEMENT.

In consideration of the additional premium paid and in reliance upon all statements made in the application, which is hereby made a part of this endorsement, it is agreed that the Basic Policy is amended (subject to the terms and conditions set forth in this endorsement) to pay on behalf of the Insured, Loss in excess of the applicable Retention amount shown in Item 8 of the Declarations up to the applicable Aggregate Limit of Liability shown in Item 8 of the Declarations, which the Insured shall become legally obligated to pay, provided Claim or Claims for such Loss is first made against the Insured and is reported to the Insurer while this endorsement is in force, and that such Claim or Claims have arisen out of any Wrongful Act.

SECTION II. DEFINITIONS.

It is understood and agreed that for the purposes of this endorsement only, the Definitions section of the Basic Policy is amended by the addition of the following items:

A. "Insured" means any entity named in Item 1. of the Declarations of the Basic Policy and its employees acting within the scope of their employment.

B. "Basic Policy" means the Directors and Officers Liability Insurance Policy to which this endorsement is attached.

C. "Loss" shall mean any amount that the Insured is legally obligated to pay for any Claim or Claims made against it for Wrongful Acts as to which coverage applies, and shall include but not be limited to damages, judgments, settlements, and reasonable Defense Costs, provided always, however, such Loss shall not include regular or overtime wages, salaries or fees of the directors, officers or employees of the Insured, the cost to comply with any injunctive or other non-monetary relief or any agreement to provide such relief, any dividends or other distribution of corporate profits of the Insured to any shareholders of the Insured or matters that may be deemed uninsurable under the law pursuant to which the Policy shall be construed.

D. "Wrongful Act" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect of breach of duty by the Insured.

BI-DO-00337 (032003)              Page 1 of 5



E. "Professional Act" shall mean only those services performed or required to be performed by the Insured for or on behalf of a customer and the Insured, pursuant to an agreement between such customer and the Insured for a fee, commission or other monetary compensation which inures to the benefit of the Insured, including such services which the Insured may provide gratis to an established customer in connection with the services provided for a fee. Professional Act shall not include (1) services performed by any entity as to which the Insured shall have acquired ownership or control or control as security for loan or other extention of credit, (2) the practice of law or the rendering of any legal services, (3) medical or health care services, (4) architectural or construction management services, or (5) lending or extentions of credit.

SECTION III. LIMIT OF LIABILITY.

A. The Insurer's maximum aggregate liability for all Loss under this endorsement (including Defense Costs) arising out of all Claims made during the Policy Year shall be the Aggregate Limit of Liability shown in Item 8 of the Declarations.  The Aggregate Limit of Liability available under this endorsement is part of, not in addition to, the Aggregate Limit of Liability for the Basic Policy shown in Item 3 of the Declarations.  All payments of Loss under this endorsement shall reduce the Aggregate Limit of Liability available to pay Loss under the Basic Policy.  All payments of Loss under the Basic Policy shall reduce the Aggregate Limit of Liability available to pay Loss under this endorsement.

B. The Insurer, subject to the Limit of Liability set forth above, shall pay one hundred percent (100%) of any Loss (including Defense Costs) in excess of the applicable Retention set forth in Item 8 of the Declarations.

SECTION IV. EXCLUSIONS.

It is further understood and agreed that for the purposes of this endorsement only, all Exclusions contained in or attached by endorsement to the Basic Policy apply to coverage provided under this endorsement. In addition, the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured, based upon, arising out of, relating to, in consequence of, or in any way involving:

1. Any actual or alleged liability of the Insured under any contract or agreement between contracting parties oral or in writing, including without limitations Claims made by borrowers, guarantors or applicants relating to an extension of credit, a refusal to extend credit, or an agreement to extend credit, provided, however, this exclusion shall not apply to Claims made by depositors arising out of any depository relationship or to Claims arising from Professional Act;

BI-DO-00337 (032003)          Page 2 of 5

INSURED ORIGINAL



2.  Trust operations of the Insured, including but not limited to the involvement of any directors, officers, employees or trustees exercising any trust or fiduciary powers, provided, however, this exclusion does not apply to Claims arising out of the Insured's serving in the capacity as fiduciary including fiduciary as defined in the Employee Retirement Income Security Act of 1974 and amendments thereto, or similar provisions of any federal, state or local statute or common law relating to pension or welfare plans or administrator or trustees of any IRA or H.R.10 Plan;

3.  The failure to collect contributions owed to an employee benefit plan or other employee program (unless such failure is the result of negligence of the directors or officers or the employees of the Insured) or for the return of any contributions to an employer if such amounts are or could be chargeable to the employee benefit plan or other employee program;

4.  Benefits paid or payable to a participant or beneficiary of an employee benefit plan or other employee programs if such benefits may lawfully be paid from the funds of the employee benefit plan or other employee programs;

5.  Bankruptcy of or suspension of payment by any bank or broker or dealer in securities or commodities, where the Claim arises out of the Insured's capacity as a fiduciary of any plan named in Item 1 of the Declarations;

6.  Safe deposit and safe keeping operations of the Insured;

7.  Any debt unpaid or obligation unfulfilled by reason of the Insured's insolvency;

8.  Any actual or alleged:

    (a) mechanical failure, faulty construction, error in design, latent defect, fire, wear or tear, gradual deterioration, electrical disturbance or electrical surge which affects a Computer System, or

    (b) failure or breakdown of electronic data processing media, or

    (c) error or omission in programming or processing;

9.  Any actual or alleged bodily injury, sickness, disease, or death of any person, assault, battery, mental anguish, emotional distress, loss of consortium, any ethnic, sexual, racial, religious, age or other unlawful discrimination or harassment, any unlawful discrimination or harassment of any nature, or any wrongful employment termination;

BI-DO-00337 (032003)          Page 3 of 5

INSURED ORIGINAL



10. Any actual or alleged violation of or failure to comply with Federal, state or local laws or regulations relating to extensions or denials of credit or consumer compliance requirements, including but not limited to truth-in-lending, usury laws, equal opportunity credit laws, deceptive trade practices, fair credit reporting laws, fair lending laws, community reinvestment laws and advertising laws;

11. Any actual or alleged violation or failure to comply with Federal or state laws or regulations relating to employment matters, including but not limited to workers compensation, unemployment insurance, social security or disability benefits;

12. Any Federal, state or local tax laws or regulations.

13. Any actual or alleged violation of any law, regulation or rule, whether statutory or common law, including without limitation any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, and any similar federal, state or local statutory or common law, arising out of, based upon or attributable to, in whole or in part, to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the Insured.

It is understood and agreed that Exclusions 1. through 13. above apply only to the coverage provided herein and do not apply to any other insurance coverage provided by the Basic Policy, unless included thereunder.  No fact pertaining to or knowledge possessed by any Insured shall be imputed to any other Insured for the purpose of determining the availability of coverage for, or with respect to Claims made against, any Insured.

SECTION V. GENERAL CONDITIONS.

It is further understood and agreed that for the purposes of this endorsement only, the General Conditions section of the Basic Policy is amended by the addition of the following items:

1. The word "endorsement" shall be substituted for the word "policy", and the word "Insured" shall be substituted for the phrases "Insured Persons" and/or "Company" throughout the Basic Policy;

2. SECTION I. INSURING AGREEMENTS (A) and (B) of the Basic Policy shall not apply hereto;

3. The definitions set forth in this endorsement shall apply to this endorsement only and not to the Basic Policy, however provided, the definitions set forth in SECTION IV. DEFINITIONS of the Basic Policy shall also apply to this endorsement;

BI-DO-00337 (032003)          Page 4 of 5



4. In the event of the cancellation of the Basic Policy, this endorse-
   ment shall automatically be canceled at the time and on the same
   terms as the Basic Policy.

Nothing herein contained shall be held to vary, waive or extend any of
the terms, conditions, provisions, agreements or limitations of the
Basic Policy other than as above stated.

This endorsement, which forms a part of and is for attachment to the
following described policy issued by the Insurer designated therein,
takes effect on the effective date of said policy, unless another
effective date is shown below, at the hour stated in said policy and
expires concurrently with said policy.

Policy No.
  04DO000378-2

Countersigned by _____
                   Authorized Representative

BI-DO-00337 (032003)        Page 5 of 5
                            INSURED ORIGINAL



**BANCINSURE, INC.**
(A stock insurance company incorporated under the laws of the State of Oklahoma, hereinafter called the Insurer.)

**DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
INCLUDING COMPANY REIMBURSEMENT**

**LIMIT OF LIABILITY AND RETENTION ENDORSEMENT**

It is understood and agreed that any provision to the contrary notwithstanding, the Basic Policy and any coverages endorsed thereon are amended by the addition of the following:

With respect to the limit of liability for coverages provided by endorsement to the Basic Policy, as specified in Item 8 of the Declarations, it is the intent of the Insurer that such Coverages be mutually exclusive from each other and from the Basic Policy. That is, payment of Loss under such endorsements shall not reduce the Aggregate Limit of Liability available to pay Loss under the Basic Policy. If, however, it is determined that more than one Coverage applies to any one Claim:

    1.   the limit of liability with respect to such Claim shall be that each-Claim-limit-of-liability available under the single applicable Coverage having the higher(est) limit of liability and not the sum of the available each-Claim-limits-of-liability; and

    2.   only the retention applicable to the Coverage having the higher(est) limit of liability available for such Claim shall be applicable to such Claim.

In the event that each of two or more applicable Coverages has the same limit of liability available for such Claim, which limit is an amount higher than that available under any other applicable Coverage:

    1.   the limit of liability of only one applicable Coverage shall apply and not the sum of the limits of the applicable Coverages; and

    2.   only the retention of one Coverage shall apply, which retention shall not be a larger amount than the lower(est) of the retentions applicable to the applicable Coverages having the same available limits.

In such event, the amount of Loss incurred for such Claim shall be applied to reduce the available aggregate limits of liability of the applicable Coverages in proportion to the amount of the available aggregate limit of liability for each applicable Coverage relative to the sum of the available aggregate limits of liability for all applicable Coverages.

BI-DO-00330 (0296)                    Page 1 of 2



Nothing herein contained shall be held to vary, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy other than as above stated.

This endorsement, which forms a part of and is for attachment to the following described policy issued by the Insurer designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

Policy No.
  04D000378-2

Countersigned by_____
                        Authorized Representative

BI-DO-00330 (0296)                    Page 2 of 2
                                  INSURED ORIGINAL



BANCINSURE, INC.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> DIRECTORS AND OFFICERS LIABILITY POLICY
> COMPUTER CRIME POLICY
> COMBINATION SAFE DEPOSITORY POLICY
> BLANKET EXTORTION POLICY
> PLASTIC CARD FRAUD POLICY
> EXCESS DEPOSIT INSURANCE BOND
> COMMERCIAL EXCESS LIABILITY INSURANCE

With respect to any one or more "certified acts of terrorism" we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Acts of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a 'certified act of terrorism':

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is commited by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United State or to influnce the policy or affect the conduct of the United States Government by coercion.

Issued to:
SECURITY PACIFIC BANK

Policy No.
04DO000378-2

BI 21 70 11 02                    Page 1 of 1

INSURED ORIGINAL



BANCINSURE, INC.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

EXCLUSION OF PUNITIVE DAMAGES RELATED TO A
CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

      DIRECTORS AND OFFICERS LIABILITY POLICY
      COMPUTER CRIME POLICY
      COMBINATION SAFE DEPOSITORY POLICY
      BLANKET EXTORTION POLICY
      PLASTIC CARD FRAUD POLICY
      EXCESS DEPOSIT INSURANCE BOND
      COMMERCIAL EXCESS LIABILITY INSURANCE

A. The following exclusion is added:

  This insurance does not apply to:

TERRORISM PUNITIVE DAMAGES

  Damages arising, directly or indirectly, out of "a certified act of
  terrorism" that are awarded as punitive damages.

B. The following definition is added:

  "Certified act of terrorism" means an act that is certified by the
  Secretary of the Treasury, in concurrence with the Secretary of State
  and the Attorney General of the United States, to be an act of
  terrorism pursuant to the federal Terrorism Risk Insurance Act of
  2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the
  following criteria for a 'certified act of terrorism':

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life,
   property or infrastructure and is commited by an individual or
   individuals acting on behalf of any foreign person or foreign
   interest, as part of an effort to coerce the civilian population of
   the United State or to influnce the policy or affect the conduct
   of the United States Government by coercion.

      Issued to:
      SECURITY PACIFIC BANK

                    Policy No.
                    04D000378-2

INSURED ORIGINAL



BANCINSURE, INC.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CONDITIONAL EXCLUSION OF TERRORISM
(RELATING TO DISPOSITION OF FEDERAL TERRORISM
RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS LIABILITY POLICY
BLANKET EXTORTION POLICY
EXCESS DEPOSIT INSURANCE BOND

A. Applicability Of The Provisions Of This Endorsement

   1. The provisions of this endorsement will become applicable
      commencing on the date when any one or more of the following first
      occurs:

      a. The federal Terrorism Risk Insurance Program ("Program"),
         established by the Terrorism Risk INsurance Act of 2002, has
         terminated with respect to the type of insurance provided under
         this Coverage Part; or

      b. A renewal, extention or continuation of the Program has become
         effective without a requirement to make terrorism coverage
         available to you and with revisions that:

         (1) Increase our statutory percentage deductible under the
            Program for terrorism losses. (That deductible determines
            the amount of all certified terrorism losses we must pay in
            a calendar year, before the federal government shares in
            subsequent payment of certified terrorism losses.); or

         (2) Decrease the federal government's statutory percentage share
            in potential terrorism losses above such deductible; or

         (3) Redefine terrorism or make insurance coverage for terrorism
            subject to provisions or requirements that differ from those
            that apply to other types of events or occurrences under
            this Coverage Part.

      The Program is scheduled to terminate at the end of December 31,
      2005 unless renewed, extended or otherwise continued by the
      federal government.

   2. If the provisions of this endorsement become applicable, such
      provisions:

INSURED ORIGINAL



     a. Supersede any terrorism endorsement already endorsed to this Coverage Part that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in a "claim" first being made against an "insured person" or the "company" on or after the date when the provisions of this endorsement become applicable; and

     b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

  3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this Coverage Part, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following Definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks:

  1. "Terrorism" means activitites against persons, organizations or property of any nature:

     a. That involve the following or preparation for the following:

       (1) Use or threat of force or violence; or

       (2) Commission or threat of a dangerous act; or

       (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

     b. When one or both of the following applies:

       (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

       (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

BI 21 20 01 05                    Page 2 of 4



C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for any "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Any "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such "loss". But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purpose of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

BI 21 20 01 05                    Page 3 of 4



Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to the incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "loss" that is otherwise excluded under this Coverage Part.

Issued to:
SECURITY PACIFIC BANK

Policy No.
04D000378-2

BI 21 20 01 05                    Page 4 of 4

INSURED ORIGINAL



BANCINSURE, INC.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXTENDED REPORTING PERIOD FOR TERRORISM COVERAGE

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS LIABILITY POLICY

The following provision is added and supersedes any provision to the contrary when an exclusion of terrorism contained in a Conditional Exclusion of Terrorism endorsement attached to this Policy goes into effect.

If:

a.   An incident of "terrorism" occurred before the conditional exclusion went into effect, but not before November 26, 2002;

b.   A "loss" resulting from a "claim" arising out of that incident would have been covered under the provisions of this insurance had the "claim" been made and reported to us prior to the conditional exclusion taking effect; and

c.   That "claim" is arising out of the incident of "terrorism" and it is made within 5 years after the date the conditional exclusion went into effect;

that "claim" will be considered to have been first made prior to the time that the conditional exclusion went into effect.

This provision does not apply to claims covered by subsequent insurance you purchase, or that would have been covered but for the exhaustion of the amount of insurance applicable to such claims.

The phrase, incident of "terrorism", means any incident of "terrorism" as defined in the Condition Exclusion of Terrorism endorsement.

Issued to:
SECURITY PACIFIC BANK

Policy No.
04D000378-2

BI 28 13 01 05                    Page 1 of 1

INSURED ORIGINAL



BANCINSURE, INC.

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE
TO THE DISCLOSURE REQUIREMENTS FOR THE TERRORISM RISK INSURANCE ACT OF
2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS
AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM
FOR CERTIFIED ACTS OF TERRORISM COVERAGE
(PURSUANT TO TERRORISM RISK
INSURANCE ACT OF 2002)


SCHEDULE

TERRORISM PREMIUM (Certified Acts)
(A) Premium through  12/31/06    $ 710
(B) Estimated Premium beyond 12/31/06 (refer to Paragraph C. below)
    $  54
Additional information, if any, concerning the terrorism premium:

Information required to complete this Schedule, if not shown above, will
be shown in the Declarations.

A. Disclosure Of Premium

   In accordance with the federal Terrorism Risk Insurance Act of 2002,
   we are required to provide you with a notice disclosing the portion of
   your premium, if any, attributable to coverage for terrorist acts
   certified under that Act. The portion of your premium attributable to
   such coverage is shown in the Scedule of this endorsement or in the
   policy Declarations.

B. Disclosure Of Federal Participation In Payment Of Terrorism Losses

   The United States Government, Department of the Treasury, will pay a
   share of terrorism losses insured under the federal program. The
   federal share equals 90% of that portion of the amount of such insured
   losses that exceeds the applicable insurer retention.

C. Possibility Of Additional Or Return Premium

   The premium for certified acts of terrorism coverage is calculated
   based in part on the federal participation in payment of terrorism
   losses as set forth in the terrorism Risk Insurance Act of 2002. The
   federal program established by the Act is scheduled to terminate at
   the end of 12/31/07 unless extended by the federal government. If the
   federal program terminates or if the level or terms of federal
   participation change, the estimated premium shown in (B) of the
   Schedule may not be appropriate.

BI 09 04 01 05                    Page 1 of 2

INSURED ORIGINAL



If this policy contains a Conditional Exclusion, continuation of
coverage for certified acts of terrorism, or termination of such
coverage, will be determined upon disposition of the federal program,
subject to the terms and conditions of the Conditional Exclusion. If
this policy does not contain a Conditional Exclusion, coverage for
certified acts of terrorism will continue. In either case, when
disposition of the federal program is determined, we will recalculate
the premium shown in (B) of the Schedule and will charge additional
premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional
premium will be due as specified in such notice.

Issued to:
SECURITY PACIFIC BANK

Policy No.
04D000378-2

BI 09 04 01 05                    Page 2 of 2

INSURED ORIGINAL



## NOTICE TO POLICYHOLDERS

### POTENTIAL RESTRICTIONS OF TERRORISM COVERAGE

This Notice has been prepared in conjunction with the POTENTIAL implementation of changes related to coverage of terrorism under your policy(s).

The Terrorism Risk Insurance Act of 2002 established a program (Terrorism Risk Insurance Program) within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. Thtat Program will terminate at the end of December 31, 2005 unless extended by the federal government. Your policy(s) will become effective (or will be renewed) while the federal Program is still in effect, but prior to a decision by the federal government on extention of the federal Program. If the federal Program terminates, or is extended with certain changes, during the terms of your policy(s), then the treatment of terrorism under your policy(s) will shange. This Notice is being provided to you for the purpose of summarizing potential impact on your coverage. The summary is a brief synopsis of significant exclusionary provisions and limitations.

This Nottice does not form a part of your insurance contract. The Notice is designed to alert you to coverage restrictions and to other provisions in certain terrorism endorsement(s) in your policy(s). If there is any conflict between this Notice and the policy(s), including its endorsements, the provisions of the policy(s), includiing its endorsements, apply.

Carefully read your policy(s), including the endorsements attached to your policy(s).

YOUR POLICY AT START OF NEW POLICY TERM:

Your policy(s) does not contain a terrorism exclusion. However, the policy(s) contains an endorsement under which coverage for "certified acts of terrorism" (which is more fully defined in the endorsement but involves acts of terrorism by or on behalf of a foreign interest) is subject to a limit on our liability pursuant to the federal Terrorism Risk Insurance Act of 2002. Further, the absence of a terrorism exclusion does not create coverage for any injury or damage that would otherwise be excluded under the policy(s), such as losses excluded by the war liability exclusion.

POTENTIAL CHANGE DURING THE TERM OF YOUR POLICY:

Conditional Exclusion of Terrorism (Relating To Disposition Of Federal Terrorism Risk Act of 2002) endorsements are attached to your policy(s). Its provisions will become applicable to your policy(s) only if certain events (one or more of them) occur. Those events include the following:

CNDT 00 01 01 05                    Page 1 of 3

INSURED ORIGINAL



- If the federal Terrorism Risk Insurance Program (TRIP) terminates with respect to the type of insurance provided under this policy. (TRIP is scheduled to terminate at the end of December 31, 2005 unless extended by federal government.); or
- If TRIP is extended with changes that redefine terroism, and we are not required to make such revised coverage available to you; or
- If TRIP is extended with changes that make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other events or occurrences under this policy, and we are not required to make such revised coverage available to you; or
- If TRIP is xtended with changes that increase insurers' statutory percentage deductible under TRIP for terrorism losses, or decrease the federal government's statutory percentage share in potential terrorism losses, and we are not required to make terrorism coverage available to you. Our deductible in 2004 is 10% of the total of our previous year's direct earned premiums. In 2005, that figure is 15%. The government's share is 90% of the terrorism losses paid by us above the deductible.

Conditional Exclusion of Terrorism (Relating To Disposition Of Federal Terrorism Risk Act of 2002) endorsement treat terrorism as follows:

- Coverage for injury or damage arising out of a terrorism incident is excluded only if:

  - The total of all insured damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from the incident, exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, and who are insured for the damage, or who would be insured but for a terrorism exclusion; or

  - For certain coverages, fifty or more persond sustain death or serious physical injury; or

    (To determine whether the threshold for property damage ($25 million) and, for certain coverages, persons injured (fifty) is exceeded, multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)

  - The terrorism event involves nuclear materials of results in nuclear reaction or radiation or radioactive contamination; or

  - The terrorism event involves the release of radioactive material, and it appears that one purpose of the terrorism was to release such material; or

CNDT 00 01 01 05                    Page 2 of 3



- The terrorism event is carried out by means of the dispersal or application of pathogenic or poisinous biological or chemical materials; or

- The terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.

- Commercial Property and Commercial Inland Marine Policy Exceptions:

- The Exception Covering Certian Fire Losses applies only in certain states. If the Exception applies in any states under your policy, that is indicated in the Schedule of the terrorism endorsement. If the Exception applies, the Schedule indicates the affected types of insurance in affected states. When the Exception applies, the exclusion of terrorism does not apply to direct loss or damage by fire to Covered Property, with respect to affected types of insurance in affected states.

See the definition of terrorism for purposes of the terrorism exclusion.

CNDT 00 01 01 05                    Page 3 of 3



BANCINSURE, INC.
(A stock insurance company incorporated under the laws of the state of Oklahoma, hereinafter called the Insurer.)

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
INCLUDING COMPANY REIMBURSEMENT

LENDER LIABILITY INSURANCE ENDORSEMENT

SECTION I.   INSURING AGREEMENT.

In consideration of the additional premium paid and in reliance upon all statements made in the application, which is hereby made a part of the endorsement, it is agreed that the Basic Policy is amended (subject to the terms and conditions set forth in this endorsement) to pay on behalf of the Insured, Loss in excess of the Retention amount shown in Item 8. of the Declarations up to the applicable Aggregate Limit of Liability shown in Item 8. of the Declarations, which the Insured shall become legally obligated to pay, provided Claim or Claims for such Loss is first made against the Insured and is reported to the Insurer while this endorsement is in force, and that such Claim or Claims have arisen out of any Wrongful Lending Act relating to an extension of credit or refused extension of credit to a Borrower.

SECTION II.   DEFINITIONS.

It is understood and agreed that for the purposes of this endorsement only, the Definitions section of the Basic Policy is amended by the addition of the following items:

A.   "Insured" means the Parent Company as defined in Section IV. of the Basic Policy and its employees acting within the scope of their employment.

B.   "Basic Policy" shall mean the Directors and Officers Liability Insurance Policy to which this endorsement is attached.

C.   "Wrongful Lending Act" shall mean any actual or alleged act or omission, error, misstatement, misleading statement, or neglect or breach of duty by the Insured.

D.   "Interrelated Wrongful Lending Acts" shall mean Wrongful Lending Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

E.   "Borrower" shall mean any person or entity which is not directly or indirectly affiliated with the Insured in any respect and to which an extension of credit, or a refusal to extend credit was made or negotiated.

BI-DO-00338 (042003)          Page 1 of 4



F.   "Controlling Direct or Beneficial Interest" shall mean (1) the
     ownership, control or power to vote twenty-five percent (25%) or
     more of any class of voting securities of the entity, (2) the
     control in any manner of the election of a majority of the
     directors of the entity, or (3) the power to exercise a con-
     trolling influence over the management or policies of the entity.

     A person shall have control if (1) the person is (a) an executive
     officer or director of the entity and (b) directly or indirectly
     owns, controls or has the power to vote more than ten percent
     (10%) of any class of voting securities of the entity, or
     (2)(a) the person directly or indirectly owns, controls or has
     the power to vote more than ten percent (10%) of any class of
     voting securities of the entity, and (b) no other person owns,
     controls or has the power to vote a greater percentage of that
     class of voting securities.

G.   "Consumer Law" shall mean any federal, state or local law or
     regulation relating to the extension or denial of consumer credit,
     including, but not limited to, truth-in-lending, equal credit
     opportunity, privacy, fair housing, consumer credit practices,
     usury, flood insurance, real estate settlement procedures, fair
     credit billing and fair credit reporting.

H.   "Guarantor" shall mean any person or entity which is unaffiliated
     with the Company and which guaranteed an extension of credit or an
     agreement to extend credit to a Borrower where such guarantee is the
     subject matter of the claim.

SECTION III.   LIMIT OF LIABILITY.

A.   The Insurer's maximum aggregate liability for all Loss under this
     endorsement (including Defense Costs) arising out of all Claims
     made during the Policy Year shall be the Aggregate Limit of Liability
     shown in Item 8 of the Declarations.  The Aggregate Limit of Liabil-
     ity available under this endorsement is part of, not in addition to,
     the Aggregate Limit of Liability for the Basic Policy shown in Item 3
     of the Declarations.  All payments of Loss under this endorsement
     shall reduce the Aggregate Limit of Liability available to pay Loss
     under the Basic Policy.  All payments of Loss under the Basic Policy
     shall reduce the Aggregate Limit of Liability available to pay Loss
     under this endorsement.

B.   The Insurer, subject to the Limit of Liability set forth above,
     shall pay one hundred percent (100%) of any Loss (including Defense
     Costs) in excess of the Retention amount set forth in Item 8 of the
     Declarations.

BI-DO-00338  (042003)        Page 2 of 4



SECTION IV.  EXCLUSIONS.

It is further understood and agreed that for the purposes of this endorsement only, all Exclusions contained in or attached by endorsement to the Basic Policy apply to coverage provided under this endorsement. In addition, the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured, based upon, arising out of, relating to, in consequence of, or in any way involving:

A.  Intentional noncompliance with any statute or regulation committed by the Insured;

B.  Failure to effect or maintain any insurance or bond;

C.  Bankruptcy of, or suspension of payment by any financial institution;

D.  Insolvency or bankruptcy of the Insured;

E.  Any extension of credit to any director, officer or employee of the Insured or to any entity in which such persons have a Controlling Direct or Beneficial Interest;

F.  Any extension of credit which was, or which would have been at the time of its making, in excess of the legal lending limit of the Insured or any related entity which extended the credit;

G.  Any lending or financial advisory service where such services are provided for a fee and are not part of the normal process of extending credit to the Borrower;

H.  Any Claim brought by any person or entity other than the Borrower or Guarantor;

I.  Any violation of any Consumer Law.

It is understood and agreed that Exclusions A. through I. above apply only to the coverage provided herein and do not apply to any other insurance coverage provided by the Basic Policy, unless included thereunder.  No fact pertaining to or knowledge possessed by any Insured shall be imputed to any other Insured for the purpose of determining the availability of coverage for, or with respect to Claims made against, any Insured.

SECTION V.  GENERAL CONDITIONS.

It is further understood and agreed for the purposes of this endorsement only, the General Conditions section of the Basic Policy is amended by the addition of the following items:

BI-DO-00338  (042003)        Page 3 of 4

INSURED ORIGINAL



A.   The definitions set forth in this endorsement shall apply to this
     endorsement only and not the Basic Policy, however provided, the
     definitions set forth in SECTION IV. DEFINITIONS of the Basic Policy
     shall also apply to this endorsement;

B.   The phrase "Wrongful Lending Act" shall be substituted for the phrase
     "Wrongful Act," the phrase "Interrelated Wrongful Lending Act" shall
     be substituted for the phrase "Interrelated Wrongful Act", the word
     "endorsement" shall be substituted for the word "policy", and the
     word "Insured" shall be substituted for the Phrases "Insured Persons"
     and/or "Company" through the Basic Policy;

C.   SECTION I. INSURING AGREEMENTS (A) and (B) of the Basic Policy shall
     not apply hereto;

D.   For the purposes of this endorsement, the word "Loss" shall not
     include any unrepaid, unrecoverable or outstanding credit extended
     to a Borrower;

E.   In the event of the cancellation of the Basic Policy, this endorse-
     ment shall automatically be canceled at the time and on the same
     terms as the Basic Policy.

Nothing herein contained shall be held to vary, waive or extend any of
the terms, conditions, provisions, agreements or limitations of the
the Basic Policy other than as above stated.

This endorsement, which forms a part of and is for attachment to the
following described policy issued by the Insurer designated therein,
takes effect on the effective date of said policy, unless another
effective date is shown below, at the hour stated in said policy and
expires concurrently with said policy.

Policy No.
  04D000378-2


                              Countersigned by _____
                                               Authorized Representative


BI-DO-00338 (042003)          Page 4 of 4
                              INSURED ORIGINAL